**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **PREMIER ELECTRONICS, L.L.C.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CASE NO. 3:18-CV-2036-S** |
| | § | |
| **ADT, L.L.C.,** | § | |
| *Defendant* | § | |

**APPENDIX TO PLAINTIFF PREMIER'S RESPONSE TO
DEFENDANT ADT LLC'S MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff Premier Electronics, L.L.C. ("Premier") files Appendix to Plaintiff Premier's Response to Defendant ADT LLC's Motion for Final Summary Judgment.

| Exhibit | Document | Page No. |
|:---:|---|:---:|
| 1 | Declaration of Shawn P. Griffith | 3-20 |
| 2 | Request for Proposal- Phillips Creek Ranch | 21-25 |
| 3 | Security Proposal for Phillips Creek Ranch | 26-28 |
| 4 | Security Monitoring Agreement – Thomas Pritchard | 29-30 |
| 5 | June 3, 2016 Letter from Greg Barnett to PCR Residents | 31 |
| 6 | May 11, 2016 Notice from Greg Barnett to PCR Residents | 32-33 |
| 7 | May 9, 2016 Notice from ADT to PCR Residents from Its Brochure | 34 |
| 8 | Emails from various PCR Homeowners | 35-40 |
| 9 | Declaration of John M. Frick | 41-42 |
| 10 | May 13, 2016 Cease and Desist Letter to ADT | 43-53 |
| 11 | May 13, 2016 Cease and Desist Letter to Insight | 54-56 |
| 12 | Declaration of Thomas Pritchard | 57-58 |
| 13 | Declaration of Elaine Roberts | 59-60 |

Respectfully submitted,

*/s/ John M. Frick*

_____

**John M. Frick**
Texas Bar No. 07455200
*jfrick@bennettweston.com*

**BENNETT, WESTON, LAJONE & TURNER, P.C.**
1603 LBJ Freeway, Suite 280
Dallas, Texas  75234
Tel:     (972) 662-4901
Fax:     (214) 393-4043

**ATTORNEYS FOR PLAINTIFF**
**PREMIER ELECTRONICS, L.L.C.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appendix to Plaintiff Premier's Response to Defendant ADT LLC's Motion for Final Summary Judgment has been furnished to the following counsel in accordance with the Federal Rules of Civil Procedure, this 31st day of January, 2020:

| | |
|---|---|
| Eric S. Boos | Tanya L. Chaney |
| SHOOK, HARDY & BACON, L.L.P. | SHOOK, HARDY & BACON, L.L.P. |
| Citigroup Center | JPMorgan Chase Tower |
| 201 S. Biscayne Blvd., Suite 3200 | 600 Travis St., Ste. 3400 |
| Miami, FL  33131-4332 | Houston, TX  77002-2926 |
| esboos@gmail.com | tchaney@shb.com |

*/s/ John M. Frick*_____
John M. Frick

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **PREMIER ELECTRONICS, L.L.C.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CASE NO. 3:18-CV-2036-S** |
| | § | |
| **ADT, L.L.C.,** | § | |
| *Defendant* | § | |

### DECLARATION OF SHAWN P. GRIFFITH

I, the undersigned individual, declare under penalty of perjury as follows:

1.      My name is Shawn P. Griffith.  I am the founder, president, and chief executive officer of Premier Electronics, L.L.C. ("Premier").  I was previously the founder, president, and chief executive officer of Powell Protection Systems, Inc. ("Powell") which was a predecessor to Premier.  I personally manage the day-to-day business of Premier, and formerly managed the day-to-day business of Powell.  All the facts set forth in this Declaration are within my personal knowledge and are true and correct.

2.      Premier is engaged in the business of installing, maintaining, and monitoring fire, burglary, and alarm systems in the State of Texas.  Powell was also in the business of installing, maintaining, and monitoring fire, burglary, and alarm systems, as well as low-voltage integration in the State of Texas.  I formed Powell in September 1993, and continuously operated it until I formed Premier.  Before that, I was employed by Westinghouse Security Systems ("Westinghouse"), one of the largest and most widely recognized security companies in the world.  I left Westinghouse to form Powell, which quickly became one of the leading home security and integration services in the North Texas area.  With more than thirty years of

PLAINTIFF'S
EXHIBIT

PENGAD 800-631-6989

1

experience in the home security and integration industry, I am thoroughly familiar with the industry customs and practices.

3.      Republic Property Group ("Republic") is a real estate development group which owns and develops residential communities in the North Texas area.  In 2011 and 2012, I met with John Wagner, Mark Wagner, Rick Strauss, and Tony Ruggeri of Republic concerning a pioneering new business model in the home security industry sometimes referred to as the bulk-billing model.  In this model, the home security company contracts with developers and homeowners' associations to capture the market in master-planned communities before any residential construction begins.  After my initial conversations with Republic, most of the subsequent communications I had with Republic were with Tony Ruggeri.

4.      Initially, over the course of a year Premier and Republic shared information and did market research together concerning using a bulk-billing model for home security services in connection with three master-planned residential communities in the DFW area which were being developed by Republic.  Ultimately, Republic delivered to me a formal Request for Proposal for an agreement to install, monitor, and service security systems in an entire residential community called Phillips Creek Ranch ("PCR") consisting of 2,300 single family homes and 600 townhomes with a guaranteed penetration rate of 100% of homes in the community.  A true and correct copy of that Request for Proposal is attached to this Declaration as Exhibit 2.

5.      As stated in the Request for Proposal, Republic represented to me that it was in the process of developing an additional master-planned community in the DFW area which, at build-out, would include over 10,000 homes.  Republic represented to Premier that it intended to enter into similar agreements with the same security partner for both of these communities, and others in the future for many additional homes that were not yet under contract and was seeking

Declaration of Shawn P. Griffith                                                                              - Page 2

4

a proposal with prices and terms predicated upon an minimum volume of 6,000 homes and a very high likelihood of any additional new Republic developments in the future, adding additional volume.  These other "future" communities are mentioned in the attached Request for Proposal.

6.      In response to the Request for Proposal, I made a Security Proposal to Tony Ruggeri and Jake Wagner with Republic.  My Security Proposal is attached to this Declaration as Exhibit 3.  Part of my proposal was offering additional services to individual homeowners, including cellular alarm transmission service for $15 per month, as well as a variety of other additional services.  The Request for Proposal and Security Proposal provide the fundamental basis for the agreement concerning PCR.

7.      Effective September 4, 2012, Premier, the Developer, and the Association entered into a written Security System Agreement (the "Agreement").  A true and correct copy of the Agreement is attached as Exhibit 1 of the Appendix to Defendant ADT LLC's Brief in Support of Motion for Summary Judgment.

8.      I formed Premier as a separate company from Powell to provide services under the Agreement and other similar bulk-billing agreements.  Accordingly, Premier is named as a party to the Agreement.  Likewise, instead of Republic, PCR Land Company, L.L.C. (the "Developer") signed the Agreement because it is the Republic-affiliated development company that developed PCR.  PCR Community Association, Inc. (the "Association") is also a party to the Agreement as the homeowners' association formed by the Developer to be ultimately be owned and managed by individual homeowners of residences (the "Residences") located in PCR.

9.      Republic provided to me the initial draft of the Agreement, which was a similar agreement concerning another master-planned community known as Lantana which was also

owned by Republic.  The parties made some changed to that initial draft to customize it for PCR and the above parties.  On behalf of Premier, I subsequently entered into a very similar bulk-billing agreement for the second Republic development known as Light Farms.

10.     Pursuant to the Agreement, Premier agreed to provide alarm monitoring services as described in the Agreement for all Residences located within PCR.  Premier agreed to provide alarm monitoring services for each Residence in the Development at a substantially discounted price based upon the volume of homes Republic had represented to Premier would ultimately be included in the planned business relationship for its two newest communities and, in all likelihood, similar opportunities for planned upcoming future communities.

11.     Pursuant to the Agreement, Premier agreed to install security systems in all Residences located within the Development if requested by the company constructing the Residences (the "Homebuilder") a cost of $700.00 per Residence to be paid by the Homebuilder. The Agreement includes specifications for such Systems as well as a limited warranty as further described in the Agreement.  If a Homebuilder did not request Premier to install the System in a particular Residence, Premier could require the Homebuilder to correct any deficiencies in the System installed prior to providing any monitoring services.

12.     Under the Texas Private Security Act, only companies licensed under the Act can provide alarm monitoring services to customers.  Premier is licensed to provide such services to customers in Texas.  Section 1702.288 of the Texas Private Security Act requires a home security company which provides alarm system services to enter a separate written contract with each client.  Therefore, pursuant to the Agreement, the owner(s) of each residence (the "Homeowners") would enter into a separate Security Monitoring Agreement (the "Monitoring

Agreements") with Premier upon completion of the Residence when the security system was first activated.

13.     For an Initial Term of thirty-six months beginning after the date of the tenth system activation for an included Residence, the Association agreed to a bulk billing arrangement pursuant to which the Association would collect Premier's charges for its alarm monitoring service as part of the HOA dues for each Residence.   Pursuant to the Agreement, Premier would invoice the Association, rather than individual Homeowners, for the monthly service fee, and the Association would remit payment to Premier.   Under the bulk-billing business model, the amount of HOA dues is calculated to include this charge.

14.     This term was a significant and material part of the parties' agreement to secure the pricing agreed to by Premier. Along with the promised volume, this bulk billing arrangement allowed Premier to provide its monitoring services to PCR Homeowners at approximately half price.   The tenth system activation occurred on July 18, 2013, at the PCR residence located at 6318 Chimney Peak.

15.     Pursuant to the Agreement, the term of the Agreement automatically renewed for successive thirty-six-month renewal terms after the expiration of the initial term, unless terminated by the Association by written notice delivered sixty days prior to the commencement of any renewal term.   It was always contemplated that the Agreement would continue through build-out of the Development.   The Request for Proposal specifically provides: "The penetration rate in the community is guaranteed at 100% of homes."   This automatic renewal term ensured Premier that it would reach the represented volume of 2,300 homes justifying its deep discounts.

16.     I personally discussed the automatic renewal term with Tony Ruggeri of Republic.   He indicated that during build-out of the Development, the Republic-affiliated

Developer would maintain control over the Association but, after build-out, the management and control of the Association would be turned over to the Homeowners. If the Homeowners ever decided to not renew the bulk-billing agreement for any reason, Tony Ruggeri represented, and I agreed, that under the Agreement, Premier would still have 2,300 customer accounts.

17.     The Agreement permits Premier to terminate the Agreement at any time upon ninety days written notice to the Association. Premier never elected to terminate the Agreement and, therefore, retained all of its right, title, and interest to the Systems.

18.     The Agreement states that if Premier files for bankruptcy, becomes insolvent, or defaults, all of Premier's right, title, and interest to the Systems would pass to the Association. Premier has never filed for bankruptcy, is not insolvent and has fulfilled all of its obligations in accordance with the Agreement.

19.     The Agreement permits Premier to sell its interest, but only if it sells substantially all of its assets. There has never been an offer from the Developer or from ADT to purchase Premier's interest or its assets. Premier did not sell, and had no intention of or plans to sell, any of its interests or assets.

20.     Section 9 of the Agreement requires the Association to give Premier written notice of any alleged material breach of the Agreement and an opportunity to cure any such breach as a prerequisite to exercising any right or remedy the Association may have, including the right to prematurely cancel the Agreement. Premier received no such written notice from Association. Neither the Association nor the Developer has ever claimed that Premier committed a material breach of the Agreement.

21.     Section 9 also provides that the involuntary transfer of Premier's interest in the Agreement constitutes a default by Premier. No such involuntary transfer ever occurred.

Declaration of Shawn P. Griffith                                                    - Page 6

22.     Section 9 further provides that the persistent and pervasive failure of Premier to provide the services described in the Agreement in a commercially reasonable manner constitutes a default of the Agreement.  Premier consistently provided the services described in the Agreement in a commercially reasonable manner.  Accordingly, neither the Association nor the Developer ever gave Premier written notice alleging that Premier had failed to provide the services described in the Agreement in a commercially reasonable manner.  Moreover, the existence of any default under that provision is an item that expressly must be submitted to arbitration as required by the agreement.  Neither the Association nor the Developer ever sent a request or demand for arbitration alleging that Premier had failed to provide the services described in the Agreement in a commercially reasonable manner.

23.     This particular business model with pre-designed system specifications mandated by the developer to the builder, a low initial installation fee, and bill collection of alarm monitoring fees by the homeowners' association was all part of a unique business formula I developed and discussed with Republic in confidence.  This business formula created a "first to market" advantage for Premier with limitless opportunity for many years during the biggest residential building boom in Texas history.

24.     As set forth in the Security Proposal, the Agreement expressly permitted Homeowners or Homebuilders to request components and features other than, or in addition to, those specified in the Agreement; however, it further provided that such person would be responsible for the additional cost of the requested modifications installed in the Residences.  The Agreement required Premier and each Homeowner to execute a separate Monitoring Agreements which included, among other terms, a provision which reads:

---

Declaration of Shawn P. Griffith                                                    - Page 7

THE SERVICES PROVIDED BY PREMIER UNDER THE ASSOCIATION AGREEMENT DO NOT INCLUDE FIRE MONITORING SERVICES. ANY FIRE MONITORING, CELULAR MONITORING OR AUTOMATION SERVICES SHALL BE PROVIDED TO THE MONITORED PREMISES ONLY UNDER A SEPARATE WRITTEN AGREEMENT BETWEEN HOMEOWNER AND PREMIER.

Additional components and features could be selected by each Homeowner under terms and pricing negotiated separately between Premier and the Homeowner. The price for these additional components and features were not subject to the bulk billing arrangement with the Association.

25.     In addition, like Powell, Premier provides other custom home theatre, home audio, and similar goods and services to Homeowners as part of its business. The relationship gave Premier a competitive advantage in marketing these services to PCR Homeowners again under terms and pricing negotiated separately between Premier and the Homeowner or Homebuilder. In my three decades of experience in this industry, I have observed that many new home buyers postpone installing custom home theatre, home audio, and similar goods and services until a few years after purchasing a home. I have observed that they are then very likely to purchase such goods and services from our company because they are already familiar and comfortable with it. Based upon my experience, I have observed that homeowners purchasing homes in the $500k price range like in PCR, on average, will purchase $5,000 per home of such goods and services from our company over the span of their homeownership there.

26.     After the Agreement was executed, Premier performed all of its obligations under the Agreement. When requested by Homebuilders, Premier installed Systems complying with the specifications set forth in the Agreement, activated its Monitoring Services and Remote Access Services, billed the Association for alarm monitoring services and billed individual

Homeowners directly for additional services as specified in the Agreement.   Premier fully complied with all warranty and maintenance obligations under the Agreement.

27.   During the initial term of the Agreement, many if not all, PCR Homeowners requested and received modifications to the Systems prescribed by the Agreement to provide for one or more of the following additional services:   fire services, cellular alarm transmission services (as opposed to using a traditional landline), automation, remote access, etc.  As required by the Agreement, Premier entered into separate written agreements with each Homeowner in PCR who requested monitoring services, cellular alarm transmission services or other modifications to the Systems prescribed by the Agreement.

28.   These required separate written agreements permitted Homeowners to avoid paying, or to greatly reduce, the upfront cost of installation, and allowed Homeowners to receive the deeply discounted price, by agreeing to a specified initial term of service, typically 5 years from the date of activation of the service for each Homeowner.   Each of Premier's representatives were trained to discuss with each Homeowner the option of paying upfront for additional services or receiving a discounted price by agreeing to the specified initial term of service.  Upon review of our customer files, I know that every single Homeowner in PCR who requested cellular alarm transmission service agreed to the specified initial term of service, rather than paying the upfront cost of installation.

29.   A true and correct copy of the Security Monitoring Agreement between Premier and a PCR Homeowner named Thomas Pritchard is attached to this Declaration as Exhibit 4. Every PCR Homeowner who received services from Premier signed a Security Monitoring Agreement substantially identical to Exhibit 4.  The typewritten portions of that agreement are common, and the handwritten portions are unique to Mr. Pritchard's home.

30.    Paragraph 2 e.) of the Security Monitoring Agreement provides:

Additional services initial term shall be five (5) years starting on the first day of the month during which the Equipment is installed and connected by Premier or its contractor(s).  The agreement will automatically continue for successive one-year renewal terms unless Customer or Premier gives written notice of cancellation at least 60 days before the initial or renewal term ends.

Because Mr. Pritchard selected the additional cellular alarm transmission service, the initial term

of his Security Monitoring Agreement with Premier ran to September 30, 2018.

31.    Republic, the Developer, and the Association were all aware of this language in

the Security Monitoring Agreements between Premier and the Homeowners.  In drafting the

Security Monitoring Agreements, the parties used as a template another security monitoring

agreement form with which Republic was also familiar and was already being used in another

development known as Lantana.  That form included substantially similar language to what is

quoted above, including an initial term of five years from the date the individual homeowner's

alarm equipment was connected.  Republic, the Developer, and the Association all knew that

Premier would be essentially adopting a version of that security monitoring agreement form for

PCR. It was never an issue between Premier, Republic, the Developer, and the Association at the

time because build-out of the PCR Development was far from complete.

32.    This provision of each Homeowner's Security Monitoring Agreement is not in

any way affected by the terms of the bulk-billing Agreement with the Developer and the HOA.

It ensures that Premier's customer, the individual Homeowner, is the only one authorized to

cancel Premier's services.  It is a standard industry practice in the alarm and security industry,

and a routine practice of Premier, to require each customer who is receiving alarm monitoring

services to provide written notice in advance of a desire to cancel service to prevent a third-party

from cancelling another person's alarm monitoring service.

---

33.     I did receive the June 13, 2014 email contained as Exhibit 7 of the Appendix to Defendant ADT LLC's Brief in Support of Motion for Summary Judgment. Insight is a property management company that was hired by the Developer to manage the Association.  Insight was familiar with the Agreement, and the large number of Homeowners who had entered into separate written agreements with Premier for alarm monitoring, cellular alarm transmission services and additional services. I did discuss with Bruce Crawford his comment about not having Homeowners sign contracts that exceed the Agreement.   We discussed that the Agreement requires Premier to enter into separate Security Monitoring Agreements with the Homeowners and expressly provides that additional services be provided under a separate agreement.   We also discussed that a number of Homeowners preferred not to have a landline and were requesting cellular alarm transmission as an additional service.   We discussed modifying the Agreement to include cellular alarm transmission service, but the Developer and the Association did not want to modify the Agreement to include that service at that time.  We discussed that it would be preposterous that the first client could have a three year agreement and the last could potentially have a one day agreement but pay nothing for the parts or labor for activating the system and Premier would get paid nothing for the service either. We discussed that it would make absolutely no sense.

34.     By April 2016, 917 homes had been built in PCR which were being monitored by Premier.  Of these, 386 homes had cellular alarm transmission and/or other additional services. During those three years, we received only a handful of routine complaints from individual Homeowners, which were promptly addressed and corrected.

35.     On April 21, 2016, we received the letter from Greg Barnett at Insight indicating that the Association was giving written notice of its intent to not renew the Agreement.  Upon

---

Declaration of Shawn P. Griffith                                                         - Page 11

receipt of the notice, I promptly contacted Bruce Crawford to ask the reason for the notice as I had no reason to believe that the Developer or the Association were in any way displeased with Premier's performance. Moreover, the terms of the Agreement were premised upon a written proposal from Republic requesting a bid predicated upon a much larger volume of Residences than had been constructed by April 2016. Bruce Crawford assured me that the notice was simply an attempt to renegotiate certain terms of the Agreement, told me to disregard it, and encouraged me to continue alarm activations for PCR Homeowners whose residences were completing construction at that time. With those assurances, Premier continued to activate service for PCR Homeowners after receipt of the notice as required by the Agreement.

36.     Bruce Crawford subsequently told me that a representative of ADT had contacted Insight and was offering to provide the same services Premier was providing under the same terms as the Agreement and to provide cellular alarm transmission as an included service if the length of the Agreement's automatic renewal terms was extended to ten years instead of three years. He told me that, if Premier matched those terms, the Association would renew the Agreement with Premier as modified. On May 5, 2016, I told Bruce Crawford that Premier accepted the proposed modification to the Agreement. The following week, Bruce Crawford called me and told me that the Association had signed a contract with ADT on May 6, 2016.

37.     On May 11, 2016, Greg Barnett of Insight called me demanding that I give him the lockout code in anticipation of the Association's change in service providers. The control panel, which ADT claims to have replaced on every job, stores key Premier information as well as key customer information. A lockout code protects that information from other security companies so that they can not "slam" or steal clients. It also protects the homeowner from someone accessing their user code and defeating the system. Someone with the lockout code

could pretend to be with Premier and give the central station the account number and tell them not to dispatch or to disregard all alarms thereby defeating the system. I had never had an occasion to discuss a lockout code with anyone affiliated with Insight, the Association, the Developer, or Republic, but the existence and use of a lockout code is something well-known within the security industry. When I initially refused, Mr. Barnett became very belligerent and began screaming at me and using foul language. I was so flustered by his and Mr. Crawford's aggressiveness that I ultimately gave them Premier's lockout code.

38.     A true and correct copy of a letter from Greg Barnett sent on June 3, 2016, is attached to this Declaration as Exhibit No. 5. That letter indicates that ADT had converted almost 550 Premier clients in roughly 20 business days, which would have been extremely unlikely, from a technical perspective without the lockout code. Without the lockout code, it would have  been necessary to have the control panels in stock, to remove the CPU or control panel that Premier had already installed and programmed, and to install a brand new one— wiring up each one and then program the entire system from factory default versus programming a couple of sections with the lockout code.

39.     Also, on May 11, 2016, we received a copy of the notice attached to this Declaration as Exhibit No. 6 which was sent to all PCR Homeowners. In that notice, our PCR Homeowner customers are told: "**You must have your system programmed for monitoring by ADT before June 21, 2016 to ensure uninterrupted service.**" We subsequently received a copy of ADT's Community Association Program brochure for Phillips Creek Ranch. A true and correct copy of the first page of that brochure is attached to this Declaration as Exhibit No. 7. On that page, ADT tells residents of PCR: "**We must program your system for monitoring by ADT before June 21, 2016 to avoid interruption of service.**"

---

Declaration of Shawn P. Griffith                                                 - Page 13

40.     Because the tenth system activation in PCR occurred on July 18, 2013, the initial term of the Agreement would not expire until July 18, 2016.  More importantly, pursuant to Premier individual Security Monitoring Agreements with each individual PCR Homeowner, there was never any risk of a service interruption for any existing PCR Homeowner.  Premier would have continued to provide the same service to each of its customers unless and until the customer gave written notice of cancellation sixty days before the end of the term of that particular customer's Security Monitoring Agreement.

41.     Neither the Agreement itself nor any of the negotiations leading up to the Agreement contemplated the Association entering into a new bulk-billing agreement with a competitor of Premier.  The Agreement does not give either the Developer or the Association any rights whatsoever in or to Premier individual Security Monitoring Agreements with its individual customers who are PCR Homeowners.  Likewise, non-renewal of the Agreement by the Association did not terminate Premier's individual Security Monitoring Agreements with the Homeowners—only terminating the Association's obligation to collect the fee for Premier's alarm monitoring service as part of the Homeowners' HOA dues.

42.     After July 18, 2016, Premier began to invoice its customers who were PCR Homeowners directly because the Association had not renewed the Agreement.  I spoke to numerous customers who called Premier to complain about receiving an invoice from Premier. Many told me that what happened to them was substantially the same as Thomas Pritchard describes in his Declaration.  Some told me that ADT representatives had told them that they would no longer need to honor the terms of their separate written agreements with Premier for monitoring, cellular alarm transmission services and other modifications to the Systems prescribed by the Agreement. Others told me that ADT representatives had told them it had

bought Premier.  Still others told me that ADT representatives had told them that Premier had gone out of business.

43.     I personally visited several homes of PCR Homeowners who were customers of Premier who were switched to ADT after the switch had occurred.  I observed that Premier's cellular alarm transmission equipment had been removed from those homes, and ADT's equipment had been installed in its place.  The cellular alarm dialers used by Premier have a sim card in it specifically authorized to Premier.  With the sim card, the dialers provide a simulated dial tone for the alarm panel to transmit signals via a dedicated cellular line, rather than on a landline, to Premier's monitoring station.  When a security company sells customer accounts to another company, it will reauthorize the other company to use that dedicated line, similar to when a person "releases" a cellular telephone number to another user.  In the security industry, this along with remote call forwarding of the number programmed in the CPU is how a "line swing" is typically done.  From a technical perspective, because there was no sale of accounts to ADT, it had to disconnect the cellular alarm dialers from the Homeowners' systems in order to redirect the alarm signal via ADT's dedicated cellular line to its monitoring station.

44.     I also personally observed that, while the control panels of the Premier's alarm systems had not been removed from those homes, the lockout codes had been reprogrammed. From a technical perspective, the simplest and easiest way to change the lockout code is by using the existing lockout code to program a new lockout code.  In the security industry, this is the way a typical service technician changes a lockout code.   There are technically feasible ways of changing the lockout code without knowing the existing code but doing so requires a much more advanced level of knowledge and skill than the average technician has.  Without the lockout

code, ADT would have had to remove and replace the CPU or control panel that Premier had programmed on each individual Homeowner's system.

45.     The removal of Premier's equipment, installation of ADT's equipment, and changing of Premier's lockout code prevents Premier from providing the alarm monitoring, cellular alarm transmission, automation, remote access, fire protection and other services to Homeowners.   From a technical perspective, these actions by ADT prevent Premier from performing services pursuant to the individual Security Monitoring Agreements with PCR Homeowners.

46.     From May 13, 2016, throughout the summer of 2016, Premier received numerous telephone calls as well as emails and letters from our customers in PCR concerned about the change.   True and correct copies of a sample of the written communications we received from our PCR customers are attached to this Declaration as Exhibit No. 8.   As indicated in those written communications, our customers expressed disappointment that such a change was made without consulting them—the members of the Associations.   Some, like Mr. Fuchs, indicated that ADT had already reprogrammed their home security system.   Some, like Mr. Robertson, were told that arrangements were being made to address their agreements for additional services. Some, like Mr. and Mrs. Yandell, indicated that they were not happy with previous experiences with ADT.   Almost of the, like Mr. Bruce, stated that the change was not a result of the service provided by Premier.   Indeed, before May 2016, I had received numerous compliments from our customers at PCR as well as the representatives of the Association, Developer, and Homebuilders at PCR.

47.     On May 13, 2016, I hired attorney John M. Frick, who at that time was affiliated with the law firm Reid & Dennis, P.C., on behalf of Premier to send letters to both Insight and

ADT demanding that they stop interfering with Premier's contracts.   Nevertheless, ADT persisted in removing Premier equipment from the Residences, installing their own, and changing the lockout codes.   From reports Premier receives from its monitoring station, I watched as the number of accounts in PCR transmitting signals became smaller and smaller.

48.   The Agreement involving PCR was only one piece of the business relationship between Premier and Republic.   Our planned business relationship included not only PCR, but also two other communities—Light Farms and Walsh.   By 2016, Premier had already entered into a separate agreement concerning the Light Farms development, which automatically renewed in 2017.   Based upon Republic's representations to me, we both expressly contemplated that a third agreement would be entered into concerning a third planned development known as Walsh.   Republic's representatives, including Tony Ruggeri, had represented to me that Walsh would ultimately include 17,000 homes at completion, making it the largest master-planned community ever built in the area.   Given that Republic-affiliated entities had already entered into agreements with Premier for two of its three new DFW communities, I certainly perceived that there was a reasonable probability that Premier would have entered into a business relationship with the Republic-affiliated developer and homeowners' association for the Walsh development under similar terms and conditions.

49.   Prior to ADT's actions in PCR during May-July 2016, every communication that I had with Tony Ruggeri and other representatives at Republic concerning the Walsh development indicated that Premier would have a business relationship with the Republic-affiliated developer and homeowners' association for the Walsh development under similar terms and conditions as the agreements for PCR and Light Farms.   Home construction had not begun at the Walsh development at that time.   After ADT's actions in PCR, I personally

communicated with Tony Ruggeri and other representatives at Republic concerning the Walsh development. Those communications indicated that such a business relationship was no longer likely to occur. Subsequently, home construction has begun at the Walsh development. No agreement has been entered into by Premier concerning the Walsh development, although Premier is willing to do so, because Tony Ruggeri and other representatives at Republic will no longer meet with me to discuss the terms of such an agreement. As a result, Republic has failed to deliver the volume of homes promised in its Request for Proposal to Premier and has began construction at the Walsh development without negotiating or entering a bulk-billing arrangement for alarm monitoring services with Premier.

     50.    Premier has a series of individual Security Monitoring Agreements, many of which include additional services, with essentially all, of the PCR Homeowners whose homes were built before July 18, 2016. Because of the actions of ADT described above, Premier is no longer able to technically provide the services required by the individual Security Monitoring Agreements. Numerous Premier customers have told me that they did not want to switch but believed they had no choice because they did not want their service to be interrupted as indicated in Exhibit Nos. 6 and 7. Premier would not have interrupted service with PCR customers who did not allow ADT to reprogram their equipment. Premier has incurred actual damages as a result.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2020.



                                                Shawn P. Griffith

---

Declaration of Shawn P. Griffith                   - Page 18



# PHILLIPS CREEK
## R A N C H

**REQUEST FOR PROPOSAL**
**Home Security Provider**

**Issued by:** Republic Property Group
**Project:** Phillips Creek Ranch
**Contact:** Tony Ruggeri, 214-292-3427
**Date:** June 21, 2012
**Deadline for proposals:** Monday, July 9, 2012
**Project start date:**  Delivery of Lots (est. November 1, 2012)



PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT
2

## Scope of Work

The Phillips Creek Ranch Community and the Homeowner's Association are requesting proposals from qualified security companies to monitor and service the community. The equipment installed will be the same for each of the 2,300 homes in the community and the individual home collections will be handled by the Homeowner's Association. One consolidated payment will be made to the security company for all homes on a monthly, or quarterly, basis. While it is not an obligation of the security company, the company will have the option to install the equipment, explained in greater detail below. The penetration rate in the community is guaranteed at 100% of homes. The HOA would like to enter into a contract with a security company with a primary term of no longer than five years (the shorter the better for the initial term). Please see below for a recommended format of proposal. All proposals are due by: **MONDAY, JULY 9th**.

Please keep in mind that while this particular proposal does not contemplate a second community, our Light Farms community is trailing only 4 months behind and the security company we chose for PCR will have a significant leg up in the 806 acre Light Farms project.

## Project Overview

Phillips Creek Ranch (PCR) is a 957 acre master planned community located in the heart of West Frisco at Lebanon and FM 423. The project is zoned for a wide variety of product types ranging from commercial and multifamily to large custom homes. The first phase, which is currently under construction, will consist of approximately 547 single family lots with an average price point of $500,000. At final build-out, there will be approximately 2,300 single family homes with an additional 600 units of attached townhomes, all of which will be required to have security monitoring. There are also 953 multi-family units that will not have security monitoring.

www.phillipscreekranchtx.com
www.facebook.com/PhillipsCreekRanch

## Developer Overview

Republic Property Group (RPG) has been active in real estate development since 1967. Since inception RPG has developed in excess of $3.5 billion in real estate across 8 states with a focus on developing high quality master-planned communities. RPG has also developed and managed apartments, condominiums and office buildings. Our primary market is the Dallas / Fort Worth Metroplex. Currently RPG is developing three master-planned communities in DFW which, at build-out, total over 10,000 homes, 3,500 acres and 35,000 residents.

www.republicpropertygroup.com

**2**

## Project Timing

- The first phase of lots will be delivered to the homebuilders on November 1st
- Model lots could be delivered as early as September 1st but can be monitored temporarily if need be
- Security Installation would have to coincide with this timing
- Our current projection for home sales velocity is 150-200 homes per year

## Security Equipment

The developer has contracted with the homebuilders to pay the security company $700 per home to install the following system.  It is at the homebuilder's discretion whether they would like to do the install with the preferred security provider or their own source.  Regardless of who does the install ALL homes must be monitored by the Phillips Creek Ranch preferred security provider.

SYSTEM COMPONENTS:

1-    DSC 6 zone Hybrid Alarm Panel
1-    4 amp hour rechargeable standby battery
1-    RJ31X telephone line seizure module
1-    Interior high intensity siren
2-    LCD keypad (installed by nearest entry from garage & front door)
All-   Perimeter doors, excluding garage doors but including doors from the garage into the living area of each Residence, and opening windows shall have alarm switch.

SECURITY SPECIFICATIONS:

Surface mount switches on vinyl windows
Recessed switches on aluminum windows
All wires to be home run to alarm panel from each opening and device
Pre-wire for 3 keypad locations
Must use B connectors on all security wire connections
Must use 22ga 2 conductor jacketed wire
   22ga 4 conductor fire wire (red)-keypads, sirens, smokes
   CAT5E to Dmarc for security
"Installer lock- out" must be left at default
Install Alarm panel in same location (or close proximity to the network/structured wiring can)

**3**

## Goals for Bid

The following is a list of bullets that we thought would be helpful in articulating the type of proposals we hope to see:

- Initial Term of no more than 5 years
- Strong customer service including 24/7 phone support
- No hidden fees associated with service calls

Ultimately, our goal in negotiating a bulk security contract through the HOA is to provide the best security deal possible for our residents.  We hope that the dramatic reduction in risk to the security company in knowing that there is 100% penetration in an area and no need for additional employees to manage contract renewals and collections will enable the residents to have a better deal than is otherwise available in the market.  A good deal for the residents is the most competitive deal possible in BOTH rate and customer service.  If you are offering a rate of $8 per month but charge $500 for service calls and never answer the phone then that is not a good deal.  Likewise, if the customer service is outstanding but the rate is $20 per month then most residents would opt to negotiate their own service provider as well.

## Proposal Format

Company Name:
Term:
Monthly Monitoring Rate:
Services Included in Rate:
Cost of Service Call:
Additional Services Offered and Costs:
Available Upgrades and Rates:

Years in Security Business:
State Security License Number:
State Fire License Number:
Size of Company:
Homebuilder Relationships:
Company Overview:
References:
Additional Comments:

**4**

PREMIER - 1924

## Site Plan



**AMENITIES**

- Large Leisure Pool and Swim Lane Pool
- State of the Art Fitness Center
- Open Air Pavilion
- Welcome Center
- On Site HOA
- Hike and Bike Trails
  3 miles of extensive hike and bike trails in phase I construction.

PHASE 1

**PHILLIPS CREEK**
RANCH
A Legacy of Exceptional Living

VISTA PARK
WELCOME CENTER
& LAKE

ELEMENTARY
SCHOOL

PHASE 1

CITY PARK

FUTURE
ELEMENTARY
SCHOOL

LONESTAR PARKWAY

**BUILDERS**

| | |
|---|---|
| Belclaire Homes | K. Hovnanian Homes |
| Darling Homes | LionsGate Homes |
| Drees Homes | Shaddock Homes |
| Highland Homes | Standard Pacific Homes |
| Huntington Homes | |

**5**

# POWELL

## PROTECTION SYSTEMS, INC.

Security Proposal for



**PHILLIPS CREEK**

**R A N C H**

Prepared by:  Shawn Powell Griffith

For:  Republic Property Group C/O

Tony Ruggeri / Jake Wagner

Date:  July 9, 2012



PLAINTIFF'S
EXHIBIT
3

PENGAD 800-631-6989

**Company:**

Powell Protection Systems, Inc.

**Term:**

10 years

**Monthly Monitoring Rate:**

$16.00 per month, per home, billed to HOA

Includes 24hr /365 days per yr., Local UL Monitoring and phone support

**Cost of Service Call:**

Powell Includes a One Year Parts and Labor Warranty. Beginning with the thirteenth month,

the homeowner will be charged $95 per hour with a one hour minimum.

(Most calls are performed within an hour or less). If equipment replacement

becomes necessary at any time beginning with the thirteenth month, the homeowner

will be charged for that equipment. ( example: keypad replacement $125, window contact $15...etc).

**Additional Services offered, Upgrades & Rates:**

- Cellular, GSM, and Long Range Radio transmission (for homeowners who elect not to have a traditional hardwired home phone line or a compatible internet or VOIP line capable of carrying the transmission of the alarm panel). $199parts /free installation $15 per month

- Smart phone security connection $199 parts, free installation $15 per month. Allows remote arming & disarming, viewing of event log and system status

- Home Surveillance Systems with weather resistant/night vision cameras, DVR and remote access via smart phone. Pricing depends on home and whether or not it has been prewired for cameras. 4 camera packages starting under $2,000.00 installed.

- Complete Home Automation including: Lighting control, thermostat control, security, whole house music, house video, keyless entry, and more. Each system is custom designed to fit the needs of the client. All of the above can be controlled via smart phones or IPads.

**Years in Security Business**:
22 Years
**State of Texas Security License Number:**
B-07212
**State of Texas Fire License Number:**
**ACR-2053**
**Size of Company:**
15 Employees

**Homebuilder Relationships:**
**Current:** The Holmes Builders, Jeff Pfeifer Custom Homes, Bella Vita Custom Homes, Parkway Custom Homes, Onnie Hewitt Custom Homes, JLD Custom Homes, Adolphus Homes, Todd Bonneau Homes, Signature Homes, Calais Custom Homes, Sterling Brook Custom Homes, Drees Homes, Darling Homes, Highland/Huntington Homes, Khovnanian Homes

**Company Overview:**
Powell Protection Systems Inc. is a 22 year old Texas Corporation that has provided electronic security systems to more than 10,000 DFW homes. In addition, Powell has installed and serviced systems for homes and businesses in other Texas markets including Houston, Austin, San Antonio, and El Paso.
PPS is a member of the North Texas Alarm Association (NTAA), The Texas Burglar and Fire Alarm Association (TBFA), And the Home Builders Association (HBA). PPS has THX and CEDIA certified technicians (The Custom Electronic Design and Installation Association). PPS Has an **A+ Rating** with the **Better Business Bureau**. Shawn Griffith, President of PPS recently fulfilled his 2 yr term as a selected chair on the 7 seat Dealer Advisory Council for Southwest Dispatch, the largest Alarm Central station in the Southwest Region. PPS is one of the few DFW companies who has the ability to handle <u>all</u> low voltage needs for both the Custom
$ Million + builder market, and the high volume production builder market.

**References:**
**Chip Bird** – President of Southwest Dispatch Center, former president of The North Texas Alarm Association.  Chip@soutwestdispatch.com  972-354-7110
**Terry Holmes** – President and CEO- The Holmes Builders, and Crestone Realty
terry@theholmesbuilders.com 469-446-1165
**Dwayne Pfeifer** – President of Parkway Custom Homes 214-384-2032
**Malcom Reed** – Security Industry Leader, former Owner Knight Security, Director NTAA
Treasuurer TBFA malcom@southwestdispatch.com 469-744-6162
**Dr. Steve Martz** – Physician, Owner Legacy ER, Client- rsmartz@mac.com 940-3919799
**Todd Bonneau** – President Todd Bonneau Homes toddbonneau@gmail.com 972-345-9598
**Bradie James** – Pro Athlete, Client  469-766-7929
**Darren Woodson** – ESPNSports commentator, Former Pro Athlete, Client- 214-208-0557
**Sean O'keefe** – Security Industry Leader, Founder Texanna Security,
Former Director of Westinghouse Security, former Director Protection One,
 Sokeefe21@verizon.com 214-912-3633

**PREMIER ELECTRONICS DEVELOPER/HOMEOWNERS' ASSOCIATION**
**SECURITY MONITORING AGREEMENT**

This Residential Central Alarm Monitoring Agreement is made on _September 19_, 20_13_, between
PREMIER ELECTRONICS, INC. ("PREMIER") and _Thomas Pritchard_ ("Homeowner")
for the premises located at _1601 Bridle Blvd, Frisco 75034_ the "Monitored Premises".
Phone _972-624-0198_

1. **Scope of Services:** PREMIER shall provide monitoring and maintenance service of the System in accordance with the terms of the Security System Agreement originally entered into by PREMIER and the Association, and as such agreement may be amended from time to time (as amended, the "Association Agreement"). THE SERVICES PROVIDED BY PREMIER UNDER THE ASSOCIATION AGREEMENT DO NOT INCLUDE ANY FIRE, OR WIRELESS MONITORING, OR AUTOMATION SERVICES.

   Premier agrees to install or cause to be installed, the protective equipment described on the installation work order and (or) perform a "takeover" of existing premise system. Premier or its contractor(s) will monitor signals activated by the system. When Premier or its contractor(s) receives a signal indicating that the system has been activated, it will telephone the System location or number designated by customer.

   (a) If an individual answers the phone, identifies himself by giving the password and reports that no assistance is required, Premier or its contractor(s) will record the alarm, but will not call an emergency agency or other designated person.

   (b) If there is no answer, a busy signal, or if any person answering does not identify himself with the proper password, Premier or its contractor(s) will telephone the appropriate emergency agency and one emergency contact as given by customer and listed on the installation work order.

   (c) In no event shall Premier or its contractor(s) be responsible for failure or delays due to busy telephone facilities, failure by third parties to respond or on account of any condition or cause beyond the reasonable control of Premier or its contractor(s).

   CUSTOMER HEREBY RELEASES PREMIER AND ITS CONTRACTOR(S) FROM RESPONSIBILITY OR LIABILITY FOR ANY FAILURE OR DELAY IN RESPONDING. CUSTOMER AGREES THAT PREMIER OR ITS CONTRACTOR(S) IS ONLY RESPONSIBLE FOR ENDEAVORING TO NOTIFY THE AGENCY, FIRM OR PERSON SPECIFIED IN THE CUSTOMER EMERGENCY INFORMATION ON THE INSTALLATION WORK ORDER

   Customer acknowledges and agrees that alarm signals are transmitted over telephone, utility, or internet service provider company lines which are wholly beyond the control and jurisdiction of Premier and its contractor(s) and are maintained and serviced by the applicable telephone, utility, or ISP company. Customer acknowledges and understands that if the service is disconnected, interrupted in any manner, or not working for any reason, alarm signals cannot be transmitted to or received by Premier or its contractor(s). Customer acknowledges that if system is integrated with customer's home network for whatever reason and the network connection is disconnected, interrupted in any manner, or not working for any reason, alarm signals may not be transmitted to or received by Premier or its contractor(s). Customer acknowledges that if any additional parts or labor are necessary in order to enable the customer's system to communicate with Premier or its contractor(s); it will be at customer's expense. Customer acknowledges and agrees that additional protection including but not limited to cellular signal transmission was made available to customer._____(Initial)

   **Customer further agrees to supply and keep current all such customer emergency information. Any changes or additions which customer makes to the customer emergency information shall be in writing and sent to Premier by certified U.S. mail to: PO box 117566, Carrollton, Texas 75011-7566.**

2. a.) **Charge for Services:** The services described in this Association Agreement are provided to Homeowner at no additional charge to Homeowner. All fees for services provided under this Agreement are to be paid by the Association in accordance with the terms of the Association Agreement. The charge for any products and services provided by PREMIER to Homeowner at Homeowner's request which are in addition to those described in the Association Agreement shall be the sole responsibility of Homeowner. Homeowner understands that the Association does not provide and has no obligation to provide, monitoring or maintenance services.

   b.) A one-time, non-refundable installation and administrative fee of $ _0_ . Such non-refundable fee shall be retained by Company as its installation, handling, and administrative fee notwithstanding the term of the Agreement; provided, however, that such fee shall be returned if and only if this agreement is cancelled within three (3) business days from the date of this Agreement.

   c.) Additional Monthly Services Provided to Homeowner
   Customer agrees to pay Company the following fees and service charges on or before the first day of each month during the term of this agreement.

   | | |
   |---|---|
   | Cellular/Signal Transmission | 15.00  per month |
   | Fire | _____ per month |
   | Warranty | _____ per month |
   | Other | _____ per month |

THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE ARE PART OF THIS AGREEMENT. CUSTOMER ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS. CUSTOMER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT.

Licensed by the Texas Private Security Bureau, mail to P.O. Box 4087, Austin, Texas 78773. (512) 463-5545.

Customer(s) _Donna Pritchard_ 9/19/13
                                   Date

By _____ 9, 19, 13
   Authorized Representative    Date

PLAINTIFF'S
EXHIBIT
4

PENGAD 800-631-6989

d.) Customer agrees to pay all sales, service, property, use and local taxes; any permit fees, telephone charges, return check charges, or late charges, if applicable. Whether imposed on Company or Customer. Return check charges are $30.00 or 5% of the face value of the check, whichever is greater, per occurrence. A late charge of $3.00 per month shall be applied to any payment not received on time within the payment period or billing cycle indicated on Company's billing statement. Payment shall be mailed to Company at P.O. Box 117566, Carrollton, TX 75011-7566. Company reserves the right to charge and Customer agrees to pay interest at a rate equal to the lesser of the highest rate allowed by law or one and one half percent (1½%) per month on any balance remaining unpaid 15 days from date due.

e.) Additional services initial term shall be five (5) years starting on the first day of the month during which the Equipment is installed and connected by Premier or its contractor(s). The agreement will automatically continue for successive one year renewal terms unless Customer or Premier gives written notice of cancellation at least 60 days before the initial or renewal term ends.

3. Permits: Homeowner shall be responsible for obtaining and maintaining all required alarm permits and licenses. All charges incurred for such permits and licenses, including assessments and fines for excessive alarm dispatch, shall be paid by Homeowner.

4. LIMITATION OF LIABILITY: Homeowner understands and agrees that neither PREMIER nor the Association is an insurer. It is not the intention of the parties to this Agreement that PREMIER or the Association assume responsibility for any loss sustained through burglary, theft, robbery, for or any other causes or any liability on the part of PREMIER or the Association by virtue of this Agreement because of the relationship hereby established. Homeowner acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from a failure of PREMIER to properly monitor or maintain the System with resulting loss to Homeowner because of among other things:

   (a) The uncertain amount of value of Homeowners' property or the property of others kept on the Monitored Premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the Monitoring Services are intended to avert;

   (b) The uncertainty of the response time of any police or fire department, should the police or fire department be dispatched as a result of a notification by PREMIER; or

   (c) The inability to ascertain what portion, if any, of any loss would be proximately caused by PREMIER's failure to perform hereunder.

   NOTWITHSTANDING THE ABOVE, HOMEOWNER UNDERSTANDS AND AGREES THAT IF EITHER PREMIER, THE ASSOCIATION, THE DEVELOPER OR THEIR RESPECTIVE AFFILIATES SHOULD BE FOUND LIABLE FOR LOSS OR DAMAGE DUE TO A FAILURE TO PROVIDE THE MONITORING SERVICES DESCRIBED HEREIN IN ANY RESPECT WHATSOEVER, THEIR LIABILITY SHALL BE LIMITED TO A MAXIMUM SUM OF TWO HUNDRED FIFTY DOLLARS ($250.00); THAT NEITHER PREMIER, THE ASSOCIATION, THE DEVELOPER OR ANY OF THEIR RESPECTIVE AFFILIATES SHALL BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES EXCEPT TO THE EXTENT OF THE AMOUNT HEREIN PROVIDED; AND THAT THE PROVISONS OF THIS SECTION SHALL APPLY IF LOSS OR DAMAGE, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSONS OR PROPERTY, FROM PERFORMANCE OR NON PERFORMANCE OF THE OBLIGATIONS IMPOSED BY THIS AGREEMENT, OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, OF PREMIER, THE ASSOCIATION, THE DEVELOPER, THEIR AFFILIATES, AGENTS, SERVANTS, ASSIGNS OR EMPLOYEES.

5. INDEMNIFICATION: WHEN HOMEOWNER HAS THE PROPERTY OF OTHERS IN ITS CUSTODY, OR THE SECURITY SYSTEM EXTENDS TO PROTECT THE PROPERTY OR LIVES OF OTHERS, HOMEOWNER AGREES AND SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS PREMIER, THE ASSOCIATION, THE DEVELOPER, THEIR AFFILIATES, EMPLOYEES AND AGENTS FROM AND AGAINST ALL CLAIMS BROUGHT BY PARTIES OTHER THAN THE PARTIES TO THIS AGREEMENT, SPECIFICALLY INCLUDING ANY SUBROGATION CLAIMS HOMEOWNER'S INSURANCE CARRIER MAY HAVE. THIS PROVISION SHALL APPLY TO ALL CLAIMS, REGARDLESS OF CAUSE, INCLUDING PREMIER'S PERFORMANCE OR FAILURE TO PERFORM, AND INCLUDING DEFECTS IN PRODUCTS, DESIGN, INSTALLATION, MAINTENANCE, OPERATION OR NONOPERATION OF THE SYSTEM, WHETHER BASED UPON NEGLIGENCE, ACTIVE OR PASSIVE, WARRANTY, OR STRICT PRODUCT LIABILITY ON THE PART OF PREMIER, ITS EMPLOYEES OR AGENTS, BUT THIS PROVISION SHALL NOT APPLY TO CLAIMS FOR LOSS OR DAMAGE SOLELY AND DIRECTLY CAUSED BY AN EMPLOYEE OF PREMIER WHILE ON HOMEOWNER'S PREMISES.

6. General:

   (a) This Agreement constitutes the entire agreement between PREMIER and Homeowner with respect to monitoring and maintenance services by PREMIER of the Monitored Premises and may not be amended, modified, or altered in any manner except in a writing signed by all parties.

   (b) This Agreement has been executed and delivered in the State of Texas and shall be interpreted under and construed in accordance with the law of Texas. Any controversy or claim arising out of or related to this Agreement or its breach shall be litigated in a court of competent jurisdiction located in Denton County, Texas and all parties hereto submit to the jurisdiction of such court.

   (c) All notices required to be given under this Agreement must be in writing. Notices under this Agreement will be deemed duly served and given when either (1) personally delivered to the party or designated agent of the party to whom they are directed; or (2) three days deposited in the United States mail, first class postage prepaid, addressed to the party at the address given for the party in this Agreement, Either party may change its address for the purpose of this Agreement by giving written notice of the changed address in the manner specified in the preceding sentence.

   (d) If one or more of the provisions of this Agreement, or the application of any provisions to any party or circumstance, is held invalid, unenforceable, or illegal in any respect, the remainder of this Agreement and the application of the provision to the other parties or circumstances remain valid and in full force and effect.



Good afternoon PCR Residents –

If you have not had a chance to call and schedule your appointment for ADT to please do so. ADT can be reached at 1-800-878-7806. The ADT technician teams have convenient time slots to fit your schedule.

To date, ADT has visited approximately 550 PCR homes and have made the monitoring transition and we encourage the remaining owners to check your schedules and have your monitoring transitioned to ADT as soon as possible so there is no interruption in service.

Thank you,
Greg Barnett
PCR Community Manager

ADT Information Packet

Please click HERE to visit the PCR Community Association web site.



PLAINTIFF'S
EXHIBIT
5

PENGAD 800-631-6989

**Danielle Page**

| | |
|---|---|
| **From:** | norozco@insightam.com |
| **Sent:** | Wednesday, May 11, 2016 10:56 AM |
| **To:** | Danielle Page |
| **Subject:** | FW: PCR Alarm Monitoring |



Dear PCR Residents,

We are pleased to announce that the Board of Directors has selected a new provider of security system monitoring and services to residents of Phillips Creek Ranch, effective June 21, 2016. The current pricing structure for alarm monitoring will remain the same. ADT Security Services will become the provider of security monitoring services under the terms of a Bulk Monitoring Agreement approved by the Board of Directors. The new ADT "NEW Package" will include the addition of cellular communication to your security system at no cost to you.

ADT Security specializes in providing 24/7 security system monitoring and services to exclusive communities throughout the nation. ADT owns and operates state-of-the-art monitoring centers and employs a large customer service team (located in Irving, TX) and certified technicians dedicated to providing service to residents of Community Associations. With ADT, we will have the benefit of the latest innovative products and services.

As part of the agreement, ADT will install an ADT CellGuard communicator for security system communication in each residence free of charge. With cellular communication, you will no longer need to maintain a phone line or voice over cable service for your security system. ADT will also reprogram your system for monitoring by ADT's dedicated monitoring center, also located in Irving, TX.

In support of this e-mail, you will soon receive a mailer from ADT. Upon receipt of this e-mail or mailer, please respond by calling ADT's Community Association Team at 800-878-7806 as soon as possible to schedule the reprogramming of your system and installation of your cellular communicator at no charge to you. You must have your system programmed for monitoring by ADT before June 21, 2016 to ensure uninterrupted service.

At the time of installation, ADT will test and inspect your security system. ADT will make you aware of any needed repairs to your existing devices, some of which may be chargeable.

ADT will also ask you to complete an activation form and provide your emergency contact information for responding to alarms.

We believe that the addition of cellular communication and the enhanced service provided in our new



PLAINTIFF'S
EXHIBIT
6
PENGAD 800-631-6989

agreement provide a significant benefit to each member of the community.

Should you have questions, you may call me at 214-494-6050.


Thank you.
Greg Barnett
PCR Community Manager

www.phillipscreekranchhoa.com

Please click HERE to visit the PCR Community Association web site.



**IMPORTANT INFORMATION**

May 9, 2016

Dear Valued Resident of Phillips Creek Ranch,

ADT is pleased to have been chosen to provide Phillips Creek Ranch with security system monitoring and services. This service is provided to you through your Association and is another benefit of living in your prestigious community. You will receive the highest level of customer care and service locally from our *Community Association Team* and are monitored 24/7 from our own state-of-the-art monitoring center.

**As a further benefit to the Owners, your Association and ADT have entered into an agreement that includes the installation of an ADT Safewatch CellGuard communicator at no cost to you. Cellular communication is the most reliable means of communication for your system and does not require a phone line or voice-over-cable, providing an added saving to you. This is a significant benefit to each Owner and we commend your Board for their proactive approach to your security.**

**To receive monitoring from ADT, we will need to visit your home to reprogram your security system.  At that time, we will install the new cellular communicator.  We will test your existing system and connected devices to ensure that they are working properly. Please call us NOW at 800-878-7806 to schedule the programming and installation of your equipment. Installation will take approximately 3 hours.  <u>We must program your system for monitoring by ADT before June 21, 2016 to avoid interruption of service.</u>**

**ADT offers a Quality Service Plan (QSP)** <u>for only $10.00 (plus tax) per month</u>. QSP includes parts and labor for normal wear and tear during normal business hours.  Batteries are excluded but the labor to install batteries is included.  Some other exclusion apply.  Please let us know if you are interested in this valuable service.

ADT offers system enhancements to meet individual needs and desires at Phillips Creek Ranch preferred prices. A list of customized services is enclosed. We offer life-safety devices like monitored smoke and carbon monoxide detectors and motion, glass break and flood detectors for interior protection. Optional **ADT Pulse**$^{SM}$ interactive services allow you to control your system remotely from a smart device and add cameras and numerous home automation devices.

If you would like to enhance your system to include any of the customized services, please schedule the installation of additional devices at the time of your system installation.  There is no labor charge to install wireless devices when added during your installation.

PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT
7

ADT Security Services
Community Association Team:  (800) 878-7806
ADT.com/Community-Associations  •  MyADT.com

> -----Original Message-----
> From: Jason Landkamer [mailto:jason@landkamer.net]
> Sent: Friday, May 13, 2016 9:17 PM
> To: danielle@premier-texas.com
> Subject: PCR alarm switch
>
> Danielle,
>
> First off, I'm disappointed to hear our HOA made the decision to switch. We've had nothing but great service from you guys and were not informed (or heard from any neighbors) the reason why the switch happened. Our house is on a wireless contract, and we saw where someone posted your email response to our private Facebook pages.
>
> I'm concerned about the situation this leaves us in if there is additional time on the wireless contract remaining. I know it was suggested that you are meeting with them at the end of the month to discuss this and other issues, but based on the current chatter, it may be better to meet with the HOA sooner than later.
>
> What can we do as wireless users to help Premier rectify this? If there are 3 years remaining, 300 residents, and $15/month that is $162k. Retail on this is $170, so most should have more than paid back the cost of the device if these were purchased in bulk.
>
> Am I thinking about this the right way?
>
>
> I'm disappointed in the decision our HOA made without our input, and hope that a compromise can be made,
>
> Thanks,
>
> Jason Landkamer
> 1612 Red Rock Canyon Rd.
>
>
> <PCR Resident Letter 5-17-16.pdf>

PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT

8



5/17/16

1) Elaine Roberts
6385 Plum Cir Dr.
Frisco, TX 75034

970-890-4866    Junqelaine@gmail.co

2) Reason for cancellation — PCR
HOA change to ADT without
my vote.

3) X _Elaine Roberts_

Please cancel my service



Ryan Fuchs
1634 Leg Iron Dr.
Frisco, TX 75034

May 20, 2016

Dear Premier Electronics,

We are homeowners in Phillips Creek Ranch in Frisco, Texas. Recently, the HOA Board of Directors
ended its contract with Premier and changed to ADT for the resident's alarm services.

Due to this change, and due to the fact that ADT has reprogrammed the systems in the neighborhood,
we have had our system reprogrammed per the terms of the new HOA contract.

Please accept this letter as a request to terminate, effective immediately, the additional services that we
had to sign up for, which include the monthly fee for the wireless transmitter and the monthly fee for
the ability to use a phone app to arm/disarm the system.

If you have any questions, please do not hesitate to contact me via email (ryanmfuchs@gmail.com) or
by phone (214-205-0424).

Sincerely,

Ryan Fuchs

37



June 14, 2016

Premier Electronics
P.O. Box 117566
Carrollton, Texas 75011

To Whom It May Concern,

I, Christopher Robertson, hereby notify Premier Electronics of my intent to cancel the agreement dated June 19, 2015 for cellular arming and disarming of our alarm monitoring services effective immediately.

As a resident of Phillips Creek Ranch, the decision to not renew a contract with Premier Electronics for community alarm monitoring services was made on my behalf by the homeowner's association. I understand provisions have been made for severing the primary service agreement (between Premier Electronics and Phillips Creek Ranch) as well as provisions for terminating any secondary agreements (between Premier Electronics and the residents) for cellular monitoring or other additional services.

Should you wish to discuss the matter, I can be reached by phone at 806.790.0192 during normal business hours.

Respectfully,

Christopher Robertson
5658 Lightfoot Lane
Frisco, Texas 75034-1030

Melissa,

We have made the change to ADT... However this is something we are not happy about. We are very disappointed in the decision the our HOA has made and how we were not included in this decision since it's something that we don't get a choice in. We have dealt with ADT in the past and have not been happy with them so this does not make us happy at all. However the HOA is persistent that we with over.....date of cancellation 7/1/16
Thank you for your time,
Andy and Jennifer Yandell
8311 Kara Creek rd
7/1/16

## Carolina Salas

| | |
|---|---|
| **From:** | Joe Bruce <Joe.Bruce@transwestern.com> |
| **Sent:** | Thursday, July 14, 2016 7:49 AM |
| **To:** | sales@premier-texas.com |
| **Cc:** | Rebecca Bruce (RebeccaBruce@Orthofix.com) |
| **Subject:** | Service |

This email serves as notice of the cancellation of our alarm services with your company at 1697 Red Rock Canyon. This was due in no way to services provided but was required by our HOA. Please let me know if you need any further information from us. Thanks.

**Joe Bruce**
Vice President-Project & Construction Management
Transwestern Development Company

TRANSWESTERN DEVELOPMENT COMPANY
5001 Spring Valley Road, Suite 400W
Dallas, TX 75244
Direct: 972.774.2572
www.transwesterndevelopment.com

Twitter | Facebook | LinkedIn

This email and any files transmitted with it are the property of Transwestern and its affiliated companies, are confidential, and are intended solely for the use of the individual or entity to which this email is addressed. If you are not one of the named recipients or if you have reason to believe you have received this message in error, please notify the sender and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing or copying of this email is strictly prohibited.

1

40

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **PREMIER ELECTRONICS, L.L.C.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CASE NO. 3:18-CV-2036-S** |
| | § | |
| **ADT, L.L.C.,** | § | |
| *Defendant* | § | |

### DECLARATION OF JOHN M. FRICK

I, the undersigned individual, declare under penalty of perjury as follows:

1.       My name is John M. Frick.  I am an attorney who is duly licensed by the State of Texas, the United States District Court for the Northern District of Texas, and the United States Court of Appeals for the Fifth Circuit.  All of the facts set forth in this Declaration are within my personal knowledge and are true and correct.

2.       In May 2016, I was hired by Shawn Griffith on behalf of his company Premier Electronics, L.L.C.   At that that, I was with the law firm Reid & Dennis, P.C.  In connection with that representation, I prepared and sent a letter dated May 13, 2016, to ADT, L.L.C. in care of N. David Bleisch, its Chief Legal Officer.  A true and correct copy of that letter is attached to this Declaration as Exhibit 10.

3.       On May 16, 2016, I received a response to the letter from Lee Jackson of ADT.  On May 17, 2016, I had a telephone conference with Lee Jackson of ADT concerning the content of that letter.

4.       On May 13, 2016, I also prepare and sent another letter to Bruce Crawford at Insight Association Management.  A true and correct copy of that letter is attached to this Declaration as Exhibit 11.



PLAINTIFF'S
EXHIBIT
9

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2020.

John M. Frick

# REID & DENNIS

*A PROFESSIONAL CORPORATION*
*ATTORNEYS AND COUNSELORS*

TOLLWAY TOWERS SOUTH, SUITE 1400 | 15660 DALLAS PARKWAY
DALLAS, TEXAS 75248-3328
(972) 991-2626

JOHN M. FRICK
jfrick@reiddennis.com

Facsimile (972) 991-2678
www.reiddennis.com
Cell (214) 395-8471

BOARD
CERTIFIED®
Civil Trial Law

May 13, 2016

<u>*Via Facsimile: 561.988.3601*</u>
N. David Bleisch
Sr. Vice-President, Chief Legal Officer
ADT, L.L.C. d/b/a ADT Security Services
1501 Yamato Rd.
Boca Raton, FL 33431

     Re:    *Security System Agreement between Premier Electronics, Inc., PCR Community Association, Inc., and PCR Land Company, L.L.C.*

Dear Mr. Bleisch:

    I represent Premier Electronics ("Premier"). Premier has an existing contractual relationship to provide security monitoring services to the residents of Phillips Creek Ranch in Frisco, Texas, through the above contract with PCR Community Association, Inc. (the "Association"). Premier also has existing individual contractual relationships to provide cellular alarm signal transmission services with the owners of the residences listed in Exhibit "A" attached hereto.

    Premier understands that ADT Security Services ("ADT") has recently negotiated a contract with the Association to provide security monitoring services to Phillips Creek Ranch through the Association upon the expiration of the above Security System Agreement with Premier. Premier has, and will continue to, honor all of its commitments under the agreement, including all new system activations in Phillips Creek Ranch, and reasonably expects the Association to honor its commitments under the agreement, including its agreement that Premier shall have the exclusive right to furnish monitoring services to residences through the Association until the expiration of the above Security System Agreement. Premier has received reports from some of its customers that ADT is interfering with the above existing contractual relationship by contacting Premier customers concerning the installation of new equipment and reprogramming of their alarm systems. On behalf of Premier, demand is hereby made that ADT immediately cease and desist its interference with Premier's exclusive rights and the performance of its obligations under the above-referenced Security System Agreement prior to the expiration of that agreement.



**PLAINTIFF'S
EXHIBIT**
____10____

PENGAD 800-631-6989

PREMIER - 15046

# REID & DENNIS

*A PROFESSIONAL CORPORATION*
*ATTORNEYS AND COUNSELORS*

N. David Bleisch
May 13, 2016 - Page 2

---

The residents whose addresses are listed on Exhibit A elected to purchase one of the cellular alarm signal transmission options available from Premier. These options were expressly excluded from the Security System Agreement to which the Association is a party as a result of the negotiations of that agreement. Therefore, each of the residents whose addresses are reflected on Exhibit A signed individual agreements with Premier which remain in effect and will remain in effect after the expiration of the Security System Agreement. Premier will continue to honor all of its obligations under its agreements with those residents, and reasonably expects that those residents will continue to honor their obligations under such agreements. When transitioning residents to ADT after the expiration of the above-referenced Security System Agreement, demand is made that ADT take reasonable steps to ensure that it will not interfere with Premier's rights or the performance of its obligations under those agreements with the affected residents by, among other things, disconnecting, redirecting, or disabling any of the equipment installed by Premier.

If you or your attorney wishes to discuss this matter in greater detail, please do not hesitate to contact the undersigned attorney.

With kind regards,

*/s/ John M. Frick*

John M. Frick

cc:   Bruce Crawford
      Insight Association Management

PREMIER - 15047

# EXHIBIT A

PREMIER - 15048

| Address | City |
| --- | --- |
| 798 Sweet Iron | Frisco |
| 6295 Canyon Ranch | Frisco |
| 6151 Baker Valley | Frisco |
| 6167 Canyon Ranch | Frisco |
| 6342 Eden Valley | Frisco |
| 6318 Chimney Peak | Frisco |
| 6353 Bear Lake Rd | Frisco |
| 6378 Chimney Peak | Frisco |
| 1753 Saddle Tree | Frisco |
| 6503 Eden Valley | Frisco |
| 8364 Pitkin | Frisco |
| 6426 Fire Creek Trail | Frisco |
| 6712 Eden Valley | Frisco |
| 6616 Eden Valley | Frisco |
| 6147 Chimney Peak | Frisco |
| 1643 Bridle Blvd | Frisco |
| 6660 Mountain Sky | Frisco |
| 1681 Bridle Blvd. | Frisco |
| 1392 Horse Creek | Frisco |
| 1537 Tumbling River | Frisco |
| 6389 Bear Lake Rd | Frisco |
| 6341 Fire Creek | Frisco |
| 1665 Campbell Court | Frisco |
| 6373 Silver Stream | Frisco |
| 6425 Fire Creek | Frisco |
| 6146 Union Creek | Frisco |
| 6263 Canyon Ranch | Frisco |
| 6784 Eden Valley | Frisco |
| 1651 Saddle Tree | Frisco |
| 6329 Bear Lake | Frisco |
| 6361 Chimney Peak | Frisco |
| 7341 Coulter Lake Rd | Frisco |
| 6510 Eden Valley | Frisco |
| 1565 Tumbling River | Frisco |
| 1605 Bridle | Frisco |
| 7263 Coulter Lake | Frisco |
| 6398 Eden Valley | Frisco |
| 6366 Chimney Peak | Frisco |
| 6168 Union Creek | Frisco |
| 773 Bonneville Rd | Frisco |
| 6687 Mountain Sky | Frisco |
| 1855 Cedar Ranch | Frisco |
| 1692 Bridle Blvd | Frisco |
| 8277 Haltered Horse | Frisco |
| 6385 Plum Creek | Frisco |
| 6342 Fire Creek Trail | Frisco |

PREMIER - 15049

| | |
|---|---|
| 6586 Silver Stream  Ln | Frisco |
| 578 Bannock | Frisco |
| 8117 Haltered Horse | Frisco |
| 6245 Chimney Peak | Frisco |
| 8451 Kara Creek | Frisco |
| 6432 Stallion Ranch | Frisco |
| 8052 Otis | Frisco |
| 8359 Pitkin | Frisco |
| 1341 Gem River | Frisco |
| 769 Sweet Iron Rd. | Frisco |
| 6779 Stallion Ranch Road | Frisco |
| 1549 Saddle Tree | Frisco |
| 6451 Stallion Ranch | Frisco |
| 1393 Gem River | Frisco |
| 6395 Eden Valley Dr | Frisco |
| 715 Sweet Iron | Frisco |
| 6317 Bear Lake | Frisco |
| 6450 Stallion Ranch | Frisco |
| 1367 Gem River | Frisco |
| 6471 Silver Stream | Frisco |
| 8424 Kara Creek | Frisco |
| 6354 Chimney Peak | Frisco |
| 1761 Bridle | Frisco |
| 6525 Mountain Sky | Frisco |
| 1844 Bridle Blvd | Frisco |
| 6499 Silver Stream | Frisco |
| 6501 Stallion Ranch | Frisco |
| 6329 Chimney Peak | Frisco |
| 8167 Otis | Frisco |
| 6522 Silver Stream | Frisco |
| 6332 Bear Lake Rd. | Frisco |
| 6271 Chimney Peak | Frisco |
| 6414 Stallion Ranch | Frisco |
| 6316 Stallion Ranch | Frisco |
| 7308 Nichols Trail | Frisco |
| 1293 Bridle Blvd | Frisco |
| 6549 Stallion Ranch | Frisco |
| 6538 Eden Valley | Frisco |
| 1566 Cedar Ranch | Frisco |
| 1849 Bridle | Frisco |
| 8182 Sylvan Dale | Frisco |
| 6385 Fire Creek Trail | Frisco |
| 1376 Horse Creek | Frisco |
| 6342 Chimney Peak Lane | Frisco |
| 6514 Stallion Ranch | Frisco |
| 8311 Kara Creek | Frisco |
| 7065 Chico Basin Rd | Frisco |

| | |
|---|---|
| 1700 Tumbling River Drive | Frisco |
| 7119 Chico Basin Rd | Frisco |
| 8169 Haltered Horse | Frisco |
| 6314 Eden Valley | Frisco |
| 6349 Plum Creek | Frisco |
| 6759 Eden Valley | Frisco |
| 6123 Baker Valley | Frisco |
| 6736 Eden Valley | Frisco |
| 8340 Kara Creek Rd | Frisco |
| 1632 Tumbling River | Frisco |
| 6996 Washakie | Frisco |
| 7249 Sevier Wells | Frisco |
| 892 Gaited Trail | Frisco |
| 8303 Pitkin Road | Frisco |
| 1319 Horse Creek Drive | Frisco |
| 1569 Cedar Ranch | Frisco |
| 6433 Stallion Ranch | Frisco |
| 6436 Silver Stream | Frisco |
| 6684 Stallion Ranch | Frisco |
| 1612 Red Rock Canyon | Frisco |
| 6584 Stallion Ranch | Frisco |
| 1363 Horse Creek | Frisco |
| 6382 Fire Creek | Frisco |
| 1882 Bridle Blvd | Frisco |
| 1345 Cedar Ranch Road | Frisco |
| 733 Sweet Iron | Frisco |
| 6412 Chimney Peak | Frisco |
| 6561 Mountain Sky Rd | Frisco |
| 7242 Nichols | Frisco |
| 6550 Mountain Sky | Frisco |
| 1226 Bridle | Frisco |
| 7220 Nichols Trail | Frisco |
| 1616 Bridle | Frisco |
| 8218 Haltered Horse | Frisco |
| 1673 Cedar Ranch Road | Frisco |
| 6908 Washakie Road | Frisco |
| 2295 Bunnels Fork | Frisco |
| 8185 Otis Drive | Frisco |
| 1560 Red Rock Canyon | Frisco |
| 2191 Bunnels Fork | Frisco |
| 1803 Cedar Ranch Rd | Frisco |
| 6636 Stallion Ranch | Frisco |
| 6313 Stallion Ranch Rd | Frisco |
| 6345 Silver Stream | Frisco |
| 2243 Bunnels Fork Rd | Frisco |
| 1360 Horse Creek Rd | Frisco |
| 1872 Tumbling River | Frisco |

| | |
|---|---|
| 6119 Canyon Ranch | Frisco |
| 8016 Otis Drive | Frisco |
| 841 Sweet Iron Road | Frisco |
| 1722 Saddle Tree Road | Frisco |
| 1720 Campbell Court | Frisco |
| 1598 Tumbling River | Frisco |
| 1621 Cedar Ranch Rd | Frisco |
| 6696 Silver Stream | Frisco |
| 7083 Chico Basin | Frisco |
| 7312 Sevier Wells | Frisco |
| 7281 Shingle Mill | Frisco |
| 2153 Bunnels Fork | Frisco |
| 1654 Saddletree | Frisco |
| 6633 Mountain Sky Rd | Frisco |
| 6581 Stallion Ranch | Frisco |
| 7367 Coulter Lake | Frisco |
| 6567 Canyon Ranch Rd | Frisco |
| 7101 Chico Basin Rd | Frisco |
| 6045 Forefront Ave | Frisco |
| 6618 Silver Stream | Frisco |
| 1377 Horse Creek Drive | Frisco |
| 813 Echols Dr. | Frisco |
| 7340 Sevier Wells | Frisco |
| 8164 Haltered Horse | Frisco |
| 2264 Flatcreek Rd. | Frisco |
| 560 Bannock | Frisco |
| 1517 Cedar Ranch Rd | Frisco |
| 5877 Lightfoot | Frisco |
| 5899 Light Foot Lane | Frisco |
| 6755 Stallion Ranch | Frisco |
| 8200 Haltered Horse | Frisco |
| 8070 Otis Dr. | Frisco |
| 5837 Dashingly | Frisco |
| 1492 Echols Dr. | Frisco |
| 1778 Tumbling River Rd | Frisco |
| 6952 Washakie Rd | Frisco |
| 759 Stardrift | Frisco |
| 7374 Nichols Trail | Frisco |
| 983 Steel Dust Rd | Frisco |
| 1541 Red Rock Canyon Rd | Frisco |
| 6477 Forefront | Frisco |
| 6039 Lightfoot Ln | Frisco |
| 8315 Sylvandale | Frisco |
| 5808 Lightfoot | Frisco |
| 8241 Haltered Horse | Frisco |
| 1015 Kettledrum Dr. | Frisco |
| 5588 Highflyer Hill Trail | Frisco |

PREMIER - 15052

| | |
|---|---|
| 6549 Canyon Ranch Rd | Frisco |
| 6231 Canyon Ranch Rd | Frisco |
| 854 Cedar Ranch Rd | Frisco |
| 6362 Pitchfork Ranch Rd | Frisco |
| 8131 Otis Dr. | Frisco |
| 8295 Haltered Horse | Frisco |
| 1308 Echols Dr. | Frisco |
| 7393 Coulter Lake | Frisco |
| 524 Bannock | Frisco |
| 1255 Bridle Blvd | FRisco |
| 7289 Coulter Lake | Frisco |
| 1372 Echols Drive | Frisco |
| 547 Pagosa Springs Drive | Frisco |
| 984 Havenbrook Ln | Frisco |
| 6006 Forefront Avenue | Frisco |
| 6250 Pitchfork Ranch Drive | Frisco |
| 8312 Kara Creek Rd | Frisco |
| 1063 Kettle Drum | Frisco |
| 6348 Stallion Ranch Rd | Frisco |
| 8445 Sylvan Dale Rd | Frisco |
| 643 Bannock Rd | Frisco |
| 6906 Solitude Creek | Frisco |
| 1625 Campbell Court | Frisco |
| 7315 Coulter Lake | Frisco |
| 1739 Bridle Blvd | Frisco |
| 5531 Light Foot Ln | Frisco |
| 6163 Bonanza Creek | Frisco |
| 791 Bonneville Road | Frisco |
| 1305 Echols | Frisco |
| 1436 Echols Dr | Frisco |
| 5245 Flemington | Frisco |
| 8293 Otis | Frisco |
| 5221 Flemington | Frisco |
| 7062 Poco Soto Drive | Frisco |
| 1039 Kettle Drum Drive | Frisco |
| 8394 Sylvan Dale Rd | Frisco |
| 8177 Pitkin Rd | Frisco |
| 6363 Mountain Sky Rd | Frisco |
| 943 Kettle Drum Lane | Frisco |
| 5936 Lightfoot Ln | Frisco |
| 5372 Highflyer Trail | Frisco |
| 5499 Lightfoot Lane | Frisco |
| 1556 Campbell Court | Frisco |
| 1097 Barbelle Ave | Frisco |
| 5530 Lightfoot Lane | Frisco |
| 699 Benalla | Frisco |
| 6935 Solitude Creek Court | Frisco |

PREMIER - 15053

| | |
|---|---|
| 7284 Sevier Wells Rd | Frisco |
| 5676 Lightfoot Lane | Frisco |
| 1093 Angels Falls Dr | Frisco |
| 721 Benalla | Frisco |
| 1752 Tumbling River Drive | Frisco |
| 7264 Nichols | Frisco |
| 6808 Washakie Road | Frisco |
| 1050 Goldwood Lane | Frisco |
| 1336 Rolling Thunder Rd | Frisco |
| 8159 Pitkin Road | Frisco |
| 8366 Sylvan Dale | Frisco |
| 965 Touchstone Road | Frisco |
| 6315 Forefront Ave | Frisco |
| 8249 Pitkin Road | Frisco |
| 5296 Flemmington Drive | Frisco |
| 1468 Echols Drive | Frisco |
| 5377 Randwick | Frisco |
| 6613 Silver Stream | Frisco |
| 6513 Canyon Ranch Rd | Frisco |
| 7136 Shingle Mill Rd | Frisco |
| 1088 Kettledrum | Frisco |
| 8211 Sylvan Dale Rd | Frisco |
| 6482 Eden Valley Drive | Frisco |
| 5769 Lightfoot Ln | Frisco |
| 919 Kettledrum | Frisco |
| 7088 Shingle Mill Road | Frisco |
| 7209 Shingle Mill Rd | Frisco |
| 743 Stardrift | Frisco |
| 1009 Stardrift Ave | Frisco |
| 8480 Kara Creek | Frisco |
| 1308 Rolling Thunder | Frisco |
| 1378 Bridle Blvd | Frisco |
| 1043 Stardrift | Frisco |
| 8452 Kara Creek | Frisco |
| 1634 Leg Iron Drive | Frisco |
| 5840 Lightfoot Lane | Frisco |
| 1132 Steel Dust Rd | Frisco |
| 6380 Forefront Ave | Frisco |
| 7491 Peace Maker Drive | Frisco |
| 1111 Steel Dust Road | Frisco |
| 940 Barbelle Avenue | Frisco |
| 8229 Sylvan Dale Rd | Frisco |
| 967 Kettledrum Drive | Frisco |
| 5575 Statesman | Frisco |
| 1589 Leg Iron Drive | Frisco |
| 6748 Solitude Creek | Frisco |
| 711 Stardrift | Frisco |

PREMIER - 15054

| | |
|---|---|
| 1349 Angle Falls Dr | Frisco |
| 1545 Campbell Court | Frisco |
| 1021 Angel Falls | Frisco |
| 824 Barbelle | Frisco |
| 8420 Pitkin Rd. | Frisco |
| 6677 Silver Stream | Frisco |
| 542 Bannock Rd | Frisco |
| 863 Bonneville Rd | Frisco |
| 6388 Mountain Sky Road | Frisco |
| 1695 Tumbling River | Frisco |
| 6360 Fire Creek Trail | Frisco |
| 6466 Chimney Peak | Frisco |
| 1717 Bridle Blvd | Frisco |
| 1333 Horse Creek Dr | Frisco |
| 836 Gaited Trail | Frisco |
| 7352 Nichols Trail | Frisco |
| 6533 Stallion Ranch | Frisco |
| 6493 Mountain Sky Rd | Frisco |
| 6984 Solitude Creek Ct | Frisco |
| 1664 Red Rock Canyon | Frisco |
| 6407 Fire Creek Trail | Frisco |
| 7110 Goose Creek Rd | Frisco |
| 7323 ShingleMill Road | Frisco |
| 6982 Roping | Frisco |
| 6528 Stallion Ranch | Frisco |
| 6484 Mountain Sky Rd | Frisco |
| 6486 Stallion Ranch | Frisco |
| 1647 Cedar Ranch Rd | Frisco |
| 6708 Stallion Ranch Rd | Frisco |
| 1688 Saddle Tree | Frisco |
| 8448 Pitkin | Frisco |
| 7029 Chico Basin Rd | Frisco |
| 6137 Bakers Valley | Frisco |
| 6313 Plumb Creek Rd | Frisco |
| 6308 Bear Lake Rd | Frisco |
| 8479 Kara Creek | Frisco |
| 911 Echols Drive | Frisco |
| 6356 Mountain Sky Rd | Frisco |
| 6356 Bear Lake | Frisco |
| 823 Sweet Iron | Frisco |
| 808 Gaited Trail | Frisco |
| 910 Kettle Drum Dr. | Frisco |
| 5562 Highflyer Hills Trails | Frisco |
| 1018 Goldwood Ln | Frisco |
| 5658 Lightfoot | Frisco |
| 5968 Lightfoot | Frisco |
| 951 Steel Dust | Frisco |

PREMIER - 15055

| | |
|---|---|
| 833 Jennala Drive | Frisco |
| 6559 Eden Valley Drive | Frisco |
| 5324 Highflyer Trail | Frisco |
| 5512 Lightfoot Ln | Frisco |
| 636 Benalla | Frisco |
| 6017 Forefront Ave | Frisco |
| 697 Bannock Rd | Frisco |
| 5678 Highflyer Hills Trail | Frisco |
| 8331 Pitkin Rd | Frisco |
| 8479 Sylvan Dale Rd | Frisco |
| 1515 Campbell Ct | Frisco |
| 6054 Forefront Ave | Frisco |
| 8149 Otis Drive | Frisco |
| 5388 Highflyer Hills | Frisco |
| 6074 Pitchfork Ranch | Frisco |
| 5515 LightFoot Ln | Frisco |
| 5463 Lightfoot Ln | Frisco |
| 7287 Sevier | Frisco |
| 7396 Nichols Trail | Frisco |
| 8187 Haltered Horse | Frisco |
| 1012 Steel Dust Dr. | Frisco |
| 1312 Horse Creek | Frisco |
| 662 Benalla | Frisco |
| 5250 Flemmington Dr | Frisco |
| 8446 Sylvan Dale | Frisco |
| 810 Cedar Ranch Rd | Frisco |
| 743 Benalla | Frisco |
| 5245 Randwick | Frisco |
| 1497 Chaps | Frisco |
| 5270 Statesman | Frisco |
| 5980 Forefront | Frisco |
| 633 Benalla | Frisco |
| 8294 Kara Creek | Frisco |
| 955 Jennala | Frisco |
| 6940 Ferrier Lane | Frisco |
| 851 Benalla | |
| 1040 Stardrift | Frisco |
| 787 Benalla Drive | Frisco |
| 6380 Bearlake Rd | Frisco |
| 6961 Solitude Creek Court | Frisco |
| 7391 Sevier Wells | Frisco |

PREMIER - 15056

# REID & DENNIS

*A Professional Corporation*
*Attorneys and Counselors*

Tollway Towers South, Suite 1400 | 15660 Dallas Parkway
Dallas, Texas 75248-3328
(972) 991-2626

John M. Frick
jfrick@reiddennis.com

Facsimile (972) 991-2678
www.reiddennis.com
Cell (214) 395-8471

BOARD
CERTIFIED·
Civil Trial Law

May 13, 2016

***Via Email: bcrawford@insightam.com***
Bruce Crawford, President
Insight Association Management
1755 N. Collins Blvd. # 201
Richardson, TX  75080

Re:   *Security System Agreement between Premier Electronics, Inc., PCR Community Association, Inc., and PCR Land Company, L.L.C.*

Dear Mr. Crawford:

I represent Premier Electronics ("Premier") and have been contacted regarding the recent notice of termination of the above contract by PCR Community Association, Inc. (the "Association"). Premier appreciates the opportunity to have serviced Phillips Creek Ranch these past three years. While it had hoped to continue to service your community for many years, Premier understands that the Association has made the decision to switch to ADT.  Therefore, pursuant to the contract, the Security System Agreement will terminate on July 18, 2016.  This date is 36 months following the tenth system activation as set forth in paragraph 4 of the agreement—which occurred on July 18, 2013 at the residence located at 6318 Chimney Peak.

Rest assured that Premier will continue to honor all of its commitments under the agreement, including all new system activations in the Phillips Creek Ranch community until July 18, 2016. Premier expects the Association to honor all of its commitments under the agreement, including paragraph 6 which provides that Premier shall have the exclusive right to furnish monitoring services to residences through the Association, through July 18, 2016.  We anticipate that you and the Association will not in any way interfere with Premier's exclusive rights or the performance of its obligations under the Security System Agreement in any way prior to the expiration of the initial term on July 18, 2016.

Recently, Greg Barnett requested the lockout code from Premier in anticipation of the Association's change in service providers. Shawn Griffith has provided this code to you in to be held in utmost confidence and it is not to be disclosed to anyone, including of course ADT, until the



PLAINTIFF'S
EXHIBIT
11

54

# REID & DENNIS

*A PROFESSIONAL CORPORATION*
*ATTORNEYS AND COUNSELORS*

Bruce Crawford
May 13, 2016 - Page 2

expiration of the Security System Agreement on July 18, 2016.  Please take reasonable steps to ensure that your new service provider is fully aware of the expiration date of the existing agreement so that it does not interfere with Premier's exclusive rights or the performance of its obligations in premature anticipation of the expiration of the agreement.  We further expect the Association to fully indemnify Premier from any loss or damage resulting from any unauthorized use or disclosure of the lockout code provided to you.

As you know, approximately 400 residents within Phillips Creek Ranch elected to purchase one of the cellular alarm signal transmission options available from Premier.  These services were expressly excluded from the Security System Agreement based upon the negotiations of that agreement.  Each of these residents signed individual agreements with Premier, most of which have a five-year term chosen by the resident to avoid the upfront cost of installation.  Because these individual agreements are separate and apart from the Security System Agreement to which the Association is a party, they will not be effected by the Association's termination of the Security System Agreement.  Premier will, of course, continue to honor all of its obligations under its agreements with those residents for cellular alarm signal transmission options.  Premier reasonably expects that your residents will continue to honor their obligations under such agreements.  We anticipate that you and the Association will not in any way interfere with Premier's rights or the performance of its obligations under such agreements and will take reasonable steps to ensure that ADT, or any other service provider selected by the Association, is aware of these agreements and will not interfere with Premier's rights or the performance of its obligations by, among other things, disconnecting, redirecting, or disabling any of the equipment installed by Premier.

A number of Premier's customers have contacted Premier over the last few days with questions and complaints concerning the Association's decision to switch to ADT.  Many appear to have been given false, inaccurate, misleading, and even disparaging information concerning Premier's role in this decision.  Premier will be notifying its customers that it made a proposal which would have extended its service to residences through the Association under the Security System Agreement, releasing those residents from their future obligations to pay monthly installments for the selected cellular alarm signal transmission options, and not required service calls for installation of new equipment or reprogramming, but that the Association rejected Premier's proposal.  They will be advised that it was the Association's decision—and not Premier's—to make the change in this way.  Those residents who selected cellular alarm signal transmission options need to be made aware that they should not allow ADT to remove, or in any way interfere with, the equipment that Premier installed for such purposes.

As you know, Premier remains under contract for the Light Farms community until February 19, 2017, and is interested in discussing the renewal and extension of the Security System Agreement for that community, as well as negotiating the terms of a Security System Agreement for the new

# REID & DENNIS

*A PROFESSIONAL CORPORATION*
*ATTORNEYS AND COUNSELORS*

Bruce Crawford
May 13, 2016 - Page 3

Walsh Ranch community.  Premier is willing to discuss some ideas which may help you minimize the blowback you are and will undoubtedly be receiving from Phillips Creek Ranch residents as they realize that the Association rejected a proposal which would have eliminated the future obligations to pay monthly installments by those residents who selected cellular alarm signal transmission options, while continuing the service currently provided without the inconvenience of additional service calls.

If you or your attorney wishes to discuss this matter in greater detail, please do not hesitate to contact the undersigned attorney.

With kind regards,

*/s/ John M. Frick*

John M. Frick

cc:   Greg Barnett
      PCR Community Manager
      *Via Email: gbarnett@insightam.com*

IN THE UNITED STATES DISTRICT COIURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PREMIER ELECTRONICS, L.L.C.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CASE NO. 3:18-CV-2036-S** |
| | § | |
| **ADT, L.L.C.,** | § | |
| *Defendant* | § | |

<u>**DECLARATION OF Thomas Pritchard**</u>

I, the undersigned individual, declare under penalty of perjury as follows:

1.      My name is Thomas Pritchard.  In 2016, I was the owner of the residence located at 1681 Bridle Blvd. Frisco, Texas  75074.  This residence is located in the master-planned community known as Phillips Creek Ranch.

2.      My residence had a home security alarm system since I first moved in. Originally, my home security alarm system was monitored by Premier Electronics.  I signed a Security Monitoring Agreement with Premier Electronics when my alarm system was activated.

3.      I understand my contract with Premier Electronics had an initial term of 5 years, and would automatically renew for subsequent one year terms until I gave written notice to cancel my contract.

4.      I never had any complaints or problems with Premier Electronics.  [Before May 2016,] I never gave written notice to cancel my contract with Premier Electronics.

5.      In May 2016, I was told that I had to switch my home security alarm monitoring service to ADT or my home security alarm system would no longer be monitored.  Before being told this, I had no desire or need to switch my alarm monitoring service from Premier Electronics to any other company.

DECLARATION OF [Name of Customer] – Page 1

PLAINTIFF'S
EXHIBIT
12

PENGAD 800-631-6989

6.    Subsequently, a representative of ADT came to my home to work on my home security system. From what the ADT representative told me at that time, I understood that, if I did not switch my service to ADT, my home alarm system would no longer be monitored. I only allowed the ADT representative to work on my system because I had been told that, if I did not switch to ADT, my alarm system would no longer be monitored.

7.    I did not know that Premier Electronics would have continued to monitor my home security alarm system if I did not switch to ADT.

8.    If the ADT representative had not switched my service, I would have continued to use Premier Electronics.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2020.

_____
Thomas Pritchard

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PREMIER ELECTRONICS, L.L.C., §
    *Plaintiff* §
§
v. §       CASE NO. 3:18-CV-2036-S
§
ADT, L.L.C., §
    *Defendant* §

<u>DECLARATION OF Elaine Roberts</u>

I, the undersigned individual, declare under penalty of perjury as follows:

1.    My name is Elaine Roberts.  I am the owner of the residence located at 6385 Plum Creek, Frisco, Texas  75074.  My residence is located in the master-planned community known as Phillips Creek Ranch.

2.    My residence has had a home security alarm system since I first moved in. Originally, my home security alarm system was monitored by Premier Electronics.  I signed a Security Monitoring Agreement with Premier Electronics when my alarm system was activated.

3.    I understand my contract with Premier Electronics had an initial term of 5 years, and would automatically renew for subsequent one year terms until I gave written notice to cancel my contract.

4.    I never had any complaints or problems with Premier Electronics.  Before May 2016, I never gave written notice to cancel my contract with Premier Electronics.

5.    In May 2016, I was told that I had to switch my home security alarm monitoring service to ADT or my home security alarm system would no longer be monitored.  Before being told this, I had no desire or need to switch my alarm monitoring service from Premier Electronics to any other company.

6.      Subsequently, a representative of ADT came to my home to work on my home security system.  From what the ADT representative told me at that time, I understood that, if I did not switch my service to ADT, my home alarm system would no longer be monitored.  I only allowed the ADT representative to work on my system because I had been told that, if I did not switch to ADT, my alarm system would no longer be monitored.

7.      I did not know that Premier Electronics would have continued to monitor my home security alarm system if I did not switch to ADT.

8.      If the ADT representative had not switched my service, I would have continued to use Premier Electronics as long as I did not have to pay out of pocket.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2020.

_____
Elaine Roberts