IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREMIER ELECTRONICS, L.L.C., *Plaintiff* | § § § § | |
| v. | § § | CASE NO. 3:18-CV-2036-S |
| ADT, L.L.C., *Defendant* | § § § | |

## PLAINTIFF PREMIER'S MOTION FOR CONTINUANCE AND TO MODIFY SCHEDULING ORDER WITH SUPPORTING MEMORANDUM OF LAW

Plaintiff Premier Electronics, L.L.C. ("Premier") files Plaintiff Premier's Motion for Continuance and to Modify Scheduling Order with Supporting Memorandum of Law.

1. This case is presently set for trial on this Court's three-week docket beginning **May 4, 2020**. Premier seeks a continuance of this trial setting for six months.

2. This Court previously entered an Agreed Scheduling Order [Doc. 18] on December 14, 2018. Some of the deadlines set forth in that order were subsequently extended by agreement of counsel. Premier seeks a modification of that scheduling order, including reopening the deadline to amend pleadings, conduct facts discovery, and provide expert disclosures.

3. Defendant ADT, L.L.C. ("ADT") has filed a motion for summary judgment. The relief requested in this Motion does not seek to delay or postpone the Court's resolution of the pending motion for summary judgment.

### ARGUMENTS & AUTHORITIES

4. Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that: "A schedule may be modified only for good cause and with the judge's consent." There are four relevant

1

factors to consider when determining whether good cause exists under Rule 16(b)(4):

1. The explanation for the failure to timely comply with the scheduling order;
2. The importance of the modification;
3. Potential prejudice in allowing the modification; and
4. The availability of a continuance to cure such prejudice.

Premier maintains that under the facts and circumstance of this case, good cause exists.

5. This lawsuit involves Premier's claims that ADT tortiously interfered with Premier's existing contracts with its customers and others in a master-planned residential community known as Phillips Creek Ranch ("PCR") and tortiously interfered with Premier's prospective business relations with prospective customers and other in another community known as Walsh. These contracts and prospective relations all arise out of a business relationship between Premier and Republic Property Group ("Republic") that contemplated similar bulk-billing agreements with the developer and homeowner's associations of three communities: 1) PCR, 2) Walsh, and 3) a third community known as Light Farms.

6. In its complaints, Premier did not allege that ADT interfered with Premier's contracts or prospective relations in Light Farms. There was no evidence it had successfully done so. Premier has a written Security System Agreement with Light Farms, which was initially virtually identical to the one in PCR. Before this lawsuit was filed, that agreement had automatically renewed for a second three-year term through February 19, 2020.

7. In 2016, Premier and ADT had discussions concerning Premier's customer accounts and bulk-billing agreement in Light Farms. In connection with those discussions, the parties signed a Non-Circumvention Agreement with respect to the Light Farms Opportunity. A true and correct copy of the Non-Circumvention Agreement is attached to this Motion as Exhibit

2

2. Until recently, Premier has had no indication that ADT attempted to contact anyone in connection with the Light Farms Opportunity or that ADT had attempted to interfere with Premier's relations with its Light Farms customers.

8. With the renewal of its bulk-billing agreement and a Non-Circumvention Agreement signed by ADT with respect to Light Farms, Premier was reasonably confident that ADT had not and would not interfere with its existing contracts and prospective relations and ADT had caused no damages to Premier in Light Farms. Accordingly, there are no allegations of tortious conduct made by Premier against ADT in this lawsuit with respect to Light Farms.

9. On November 15, 2019, the community manager of the Light Farms Homeowners Association (the "Light Farms HOA") sent a letter to Premier seeking to prematurely end the bulk-billing Agreement for Light Farms effective January 31, 2020. Premier has been in discussions with the Light Farms HOA concerning this letter since then. Still, Premier had no indication of any wrongdoing by ADT. Within the last month, that has changed.

10. Premier has learned that sales representatives for ADT have begun to aggressively market ADT's competing services to Premier's customers in Light Farms. Once again, ADT has done so by lying to Premier's customers. One Premier customer in Light Farms, Judy Kincaid, has told Premier in a recorded telephone conversation that the ADT sales representative told her that "Premier has been sold to another company," and that "it was not a local company." These statements are, of course, false, and ADT knows they are false. Premier has not been sold to another company, and Premier is a local company. This recording has been provided to ADT's attorney, and is in the process of being transcribed so that it can be submitted to the Court; however, the court reporter/transcriptionist requires ten days to complete this assignment. Premier intends to supplement this Motion with this transcript when it becomes available.

11. As a result of ADT's conduct, Premier seeks a six-month continuance to investigate this new conduct recently committed by ADT to interfere with Premier's existing and prospective relations involving the Light Farms community, to amend its pleadings if necessary to include complaints concerning ADT's conduct in Light Farms, to conduct discovery if necessary concerning such conduct, and to amend its expert report to include damages for such conduct.

12. Premier did not address Light Farms within the time limits imposed by the Agreed Scheduling Order because, to Premier's knowledge and belief, ADT had not committed any wrongful conduct with respect to Light Farms until recently. Given the substantial similarities between the bulk-billing agreements for PCR and Light Farms, the commonality of the parties and many witnesses, and the apparent similarity of the conduct committed by ADT, allowing the requested modification will secure a just, speedy, and inexpensive determination of all of the disputes between Premier and ADT. Modifying the scheduling order will not prejudice ADT and will avoid prejudicing Premier who, without such a modification, would need to initiate a second lawsuit against ADT for its conduct in Light Farms.

13. ADT has filed a motion for summary judgment [Doc. 23] which largely concerns the interplay between language in Premier's Security Monitoring Agreements with its PCR customers and the language of its bulk-billing agreement in PCR. There is no reason this request should delay the Court's decision with respect to that motion.

14. Premier seeks a continuance and modification of the Amended Scheduling Order as follows:

1. **Trial Date:** A new trial date in November 2020 either agreed by the parties or determined by the Court.

2. **Amendment of Pleadings:** A deadline of May 1, 2020, to amend pleadings to add any claims pertaining to the Light Farms community.

3. **Dispositive Motions:** A deadline to file any new dispositive motions of August 31, 2020.

4. **Designation of Experts:** A deadline to designate experts on or before June 1, 2020.

5. **Responsive Designation of Experts:** A deadline to designate experts on or before June 29, 2020.

6. **Objections to Experts:** Daubert motions to be filed no later than August 14, 2020.

7. **Pretrial Disclosures:** Pretrial disclosures to be made by October 2, 2020.

8. **Completion of Discovery:** A deadline of July 31, 2020 to complete discovery.

This continuance is not sought for delay only but so that justice may be done.

## PRAYER

Premier prays that this Court deny Defendant ADT LLC's Motion for Final Summary Judgment in its entirety. Plaintiff prays for general relief.

Respectfully submitted,

_____
Premier Electronics, L.L.C. by and through its President Shawn P. Griffith

/s/ John M. Frick

_____
**John M. Frick**
Texas Bar No. 07455200
jfrick@bennettweston.com

5

BENNETT, WESTON, LAJONE & TURNER, P.C.
1603 LBJ Freeway, Suite 280
Dallas, Texas 75234
Tel: (972) 662-4901
Fax: (214) 393-4043

**ATTORNEYS FOR PLAINTIFF
PREMIER ELECTRONICS, L.L.C.**

**CERTIFICATE OF SERVICE**

    This is to certify that a true and correct copy of the foregoing Plaintiff Premier's Motion for Continuance and to Modify Scheduling Order with Supporting Memorandum of Law has been furnished to the following counsel in accordance with the Federal Rules of Civil Procedure, this 11th day of February, 2020:

Eric S. Boos
SHOOK, HARDY & BACON, L.L.P.
Citigroup Center
201 S. Biscayne Blvd., Suite 3200
Miami, FL 33131-4332
esboos@gmail.com

Tanya L. Chaney
SHOOK, HARDY & BACON, L.L.P.
JPMorgan Chase Tower
600 Travis St., Ste. 3400
Houston, TX 77002-2926
tchaney@shb.com

/s/ John M. Frick
John M. Frick

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREMIER ELECTRONICS, L.L.C., <br> *Plaintiff* <br><br> v. <br><br> ADT, L.L.C., <br> *Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CASE NO. 3:18-CV-2036-S |

### APPENDIX TO PLAINTIFF PREMIER'S MOTION FOR CONTINUANCE AND TO MODIFY SCHEDULING ORDER

Plaintiff Premier Electronics, L.L.C. ("Premier") files Appendix to Plaintiff Premier's Motion for Continuance and to Modify Scheduling Order..

| Exhibit | Document | Page No. |
|:---:|:---|:---:|
| 1 | Declaration of Shawn P. Griffith | 3-20 |
| 2 | Non-Circumvention Agreement | 21-27 |

Respectfully submitted,

*/s/ John M. Frick*

**John M. Frick**
Texas Bar No. 07455200
*jfrick@bennettweston.com*

**BENNETT, WESTON, LAJONE & TURNER, P.C.**
1603 LBJ Freeway, Suite 280
Dallas, Texas 75234
Tel:   (972) 662-4901
Fax:   (214) 393-4043

**ATTORNEYS FOR PLAINTIFF
PREMIER ELECTRONICS, L.L.C.**

1

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing Appendix to Plaintiff Premier's Motion for Continuance and to Modify Scheduling Order has been furnished to the following counsel in accordance with the Federal Rules of Civil Procedure, this 11th day of February, 2020:

Eric S. Boos
SHOOK, HARDY & BACON, L.L.P.
Citigroup Center
201 S. Biscayne Blvd., Suite 3200
Miami, FL 33131-4332
esboos@gmail.com

Tanya L. Chaney
SHOOK, HARDY & BACON, L.L.P.
JPMorgan Chase Tower
600 Travis St., Ste. 3400
Houston, TX 77002-2926
tchaney@shb.com

                                            /s/ *John M. Frick*
                                            John M. Frick

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREMIER ELECTRONICS, L.L.C., *Plaintiff* | § § § | |
| v. | § § | CASE NO. 3:18-CV-2036-S |
| ADT, L.L.C., *Defendant* | § § § § | |

## DECLARATION OF SHAWN P. GRIFFITH

I, the undersigned individual, declare under penalty of perjury as follows:

1. My name is Shawn P. Griffith. I am the founder, president, and chief executive officer of Premier Electronics, L.L.C. ("Premier"). All the facts set forth in this Declaration are within my personal knowledge and are true and correct.

2. Premier is engaged in the business of installing, maintaining, and monitoring fire, burglary, and alarm systems in the State of Texas.

3. Republic Property Group ("Republic") is a real estate development group which owns and develops residential communities in the North Texas area. In 2011 and 2012, I met with representative of Republic concerning a pioneering new business model in the home security industry sometimes referred to as the bulk-billing model. In this model, the home security company contracts with developers and homeowners' associations to capture the market in master-planned communities before any residential construction begins.

4. Initially, over the course of a year Premier and Republic shared information and did market research together concerning using a bulk-billing model for home security services in connection with three master-planned residential communities in the DFW area which were being developed by Republic: Phillips Creek Ranch ("PCR"), Light Farms, and Walsh.

Ultimately, Republic delivered to me a formal Request for Proposal for an agreement to install, monitor, and service security systems in PCR with a guaranteed penetration rate of 100% of homes in the community.

5. Effective September 4, 2012, Premier, the Developer, and the Association entered into a written Security System Agreement (the "Agreement") with respect to PCR.

6. Effective March 25, 2013, Premier entered into a substantially similar written Security System Agreement with respect to Light Farms.

7. Both the PCR and Light Farms bulk-billing agreement require Premier to enter into separate Security Monitoring Agreement with individual homeowners and permits those homeowners to request additional components and features. The price for these additional components and features were not subject to the bulk billing arrangements.

8. The duration of each Homeowner's Security Monitoring Agreement is not in any way affected by the terms of the bulk-billing Agreement with the Developer and the HOA. Each such agreement ensures that Premier's customer, the individual homeowner, is the only one authorized to cancel Premier's services. It is a standard industry practice in the alarm and security industry, and a routine practice of Premier, to require each customer who is receiving alarm monitoring services to provide written notice in advance of a desire to cancel service to prevent a third-party from cancelling another person's alarm monitoring service.

9. On April 21, 2016, we received the letter from Greg Barnett at Insight indicating that the Association was giving written notice of its intent to not renew the Agreement. This lawsuit concerns ADT's conduct in lying to our customers at PCR and hindering the performance of our contracts by removing and/or reprogramming the equipment installed at the customer's homes.

10. Before this lawsuit was filed, Premier had discussions with ADT concerning a potential business opportunity concerning the Light Farms development. In connection with those discussions, the parties entered into a Non-Circumvention Agreement. A true and correct copy of the Non-Circumvention Agreement is attached to this Declaration as Exhibit 2. Those discussions never came to fruition.

11. Premier's separate agreement concerning the Light Farms development automatically renewed in 2017 through February 19, 2020.

12. In this lawsuit, Premier as not alleged that ADT interfered with Premier's contracts or prospective relations in Light Farms. There was no evidence it had successfully done so. With the renewal of our bulk-billing agreement and a Non-Circumvention Agreement signed by ADT with respect to Light Farms, I was reasonably confident that ADT had not and would not interfere with Premier's existing contracts and prospective relations and that ADT had not directly caused any damages to Premier in Light Farms. Accordingly, there are no allegations of tortious conduct made by Premier against ADT in this lawsuit with respect to Light Farms.

13. On November 15, 2019, the community manager of the Light Farms Homeowners Association (the "Light Farms HOA") sent a letter to Premier seeking to prematurely end the bulk-billing Agreement for Light Farms effective January 31, 2020. Premier has been in discussions with the Light Farms HOA concerning this letter since then. Still, Premier had no indication of any wrongdoing by ADT. Within the last month, that has changed.

14. Premier has learned that sales representatives for ADT have begun to aggressively market ADT's competing services to Premier's customers in Light Farms. Once again, ADT has done so by lying to Premier's customers. One Premier customer in Light Farms, Judy Kincaid,

has told Premier in a recorded telephone conversation that the ADT sales representative told her that "Premier has been sold to another company," and that "it was not a local company." These statements are, of course, false, and ADT knows they are false. Premier has not been sold to another company, and Premier is a local company. This recording has been provided to Premier's attorney, and I understand it has also been provided to ADT's attorney.

15. Premier seeks a six-month continuance to investigate this new conduct recently committed by ADT to interfere with Premier's existing and prospective relations involving the Light Farms community, to amend its pleadings if necessary to include complaints concerning ADT's conduct in Light Farms, to conduct discovery if necessary concerning such conduct, and to amend its expert report to include damages for such conduct.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2020.

_____
Shawn P. Griffith

# NON-CIRCUMVENTION AGREEMENT

This Non-Circumvention Agreement (this "Agreement") is entered into as of this 26th day of July, 2016, and is by and between Premier Electronics LLC ("Presentor") and ADT ("Presentee"), together with each of Presentor's and Presentee's officers, directors, shareholders, agents, employees, consultants, attorneys and affiliates.

## RECITALS

WHEREAS, Presentor has a business investment opportunity which it desires to present to Presentee and any and all other opportunities relating to or derived from such opportunity (the "Opportunity"), and intends to assist Presentee with respect to the Opportunity; and

WHEREAS, Presentee has an investor (the "Investor") who is interested in participating in the opportunity; and

WHEREAS, Presentor desires and Presentee agrees that prior to identification of the Opportunity by Presentor and the Investor by Presentee, each of Presentor and Presentee must agree to certain non-circumvention and nondisclosure covenants; and

WHEREAS, Presentee desires to be presented with the opportunity to acquire the Opportunity and Presentor desires to present the opportunity to the Investor.

NOW, THEREFORE, for good and adequate consideration, the receipt of which is hereby acknowledged, the parties hereto, agree as follows:

## ARTICLE I
## NON-CIRCUMVENTION

Section 1. **Further contacts with the Opportunity (Non-Circumvention).** Presentee agrees not to contact or initiate contact at any time for any purpose, either directly or indirectly, the Opportunity or any officers, directors, shareholders, consultants, attorneys, employees, agents or other affiliates of the Opportunity, or any other property or properties whose identity was revealed through the efforts of Presentor, unless such approval is specifically granted in written form by Presentor on a case-by-case basis. Presentee further agrees not to undertake any transaction or a series of transactions of any kind with the Opportunity or to collect any fees in connection with the Opportunity without the express prior written agreement of Presentor, which agreement may be withheld in Presentor's sole discretion.

1

Section 2. **Trade Secrets**. Much of the business information communicated to Presentor by Presentee and by Presentee to Presentor may be trade secrets to such party. Each of Presentee and Presentor agrees to preserve the secrecy of said information. All information which becomes known through the course of business conducted by and between Presentor and Presentee shall be deemed trade secrets. Said trade secrets include, but are not limited to, prepared information packages; financials; related documents; names of potential acquisitions, intermediaries, contacts and deal sources; deal structures and financial considerations. Each of Presentee and Presentor agrees to preserve and protect the secrecy and confidentiality of such information and shall disclose same to no third party without the express written permission from the other. This prohibition shall be enforced from the date of this agreement and for a period of five years thereafter.

Section 3. **Applicability of Agreement**. Presentor and Presentee both agree that the provisions of this Agreement extend to the employees and officers of their respective companies/businesses. Said principals further agree to provide the requisite internal security of the subject data within their respective organizations.

## ARTICLE II
## MISCELLANEOUS

Section 1. **Dispute Resolution**. In the event of any dispute, controversy, or claim related to or arising from the terms of this Agreement, the parties hereto hereby agree that any such dispute, controversy or claim shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Said arbitration shall be conducted in Dallas County, Texas, by a single arbitrator. Such dispute resolution shall be in accordance with the applicable substantive laws of the state of Texas. The prevailing party shall be entitled to all fees and costs arising therefrom, including, but not limited to, attorney's fees and costs.

Section 2. **Authority**. Each of Presentor and Presentee hereby represents that it has full right, power and authority to execute this Agreement and to perform the actions contemplated hereby. Upon execution of this Agreement, each of Presentor and Presentee hereby binds its representatives and heirs and all subsidiaries and firms affiliated with Presentor or Presentee, as the case may be, under the terms of this Agreement.

Section 3. **Integration and Severability**. This Agreement constitutes the entire agreement between the parties hereto regarding the transactions contemplated hereby. In the event a term or terms of this Agreement is/are held to be unenforceable or unlawful, the remaining terms of this Agreement shall continue in full force and effect.

Section 4. **Notices.** All notices, requests, consents and other communications hereunder shall be in writing and shall be delivered in person or by registered or certified mail, return receipt requested, postage and fees prepaid, or by overnight courier, receipt signature required, or by telecopier transmission, with verification of the transmission received by the sender, to the parties as set forth below or at such other place as either party may, by written notice to the other, direct:

If to Presentor:

_Premier Electronics_

Facsimile No.: _972-245-8705_
Attn: _Shaun Griffith_

If to Presentee:
_ADT - Jack Teel_

Facsimile No.: _____
Attn: _____

Any party hereto may change the address designated for mailing by written notice to the other party. All such notices shall be deemed to be given when delivered in person or telecopied, or if placed in the mail as aforesaid, then four days thereafter.

Section 5.   **Counterparts.** This Agreement may be executed simultaneously in one or more counterparts, including telecopy facsimiles, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

Section 6.   **Amendments.** This Agreement may only be amended, supplemented, or otherwise altered with the express written consent of all parties hereto.

3

The Parties hereto, agreeing to be bound, hereby execute this Agreement effective the date first set forth above.

PRESENTOR

By: _____Premier Electronics, LLC_____
Name: _____Shawn Griffeith_____
Title: _____President_____

PRESENTEE

By: _____ADT_____
Name: _____Jacil Teel_____
Title: _____Regional Mgr._____

4

## MUTUAL NON-DISCLOSURE AND NON-USE AGREEMENT (536B)

THIS MUTUAL NON-DISCLOSURE AND NON-USE AGREEMENT (this "Agreement") is made and entered into as of 26th July, 2016 between Premier Electronics, LLC. (the "Company") and ADT Boca Raton, Florida (the "Recipient")(the Company and the Recipient are individually referred to herein as the "Party" and collectively as the "Parties").

1. Purpose. The Parties wish to explore and evaluate a business opportunity of mutual interest and, in connection with this opportunity, the Company has disclosed or will disclose to the Recipient and the Recipient has or will disclose to the Company certain proprietary technical and business information that each Party considers confidential and desires the other Party to treat as confidential. In addition, if the Parties enter into such business opportunity, each Party wishes to continue to treat such proprietary technical and business information confidential during the course of the resulting business relationship. As a condition to and in consideration of such information being disclosed, each Party hereby enters into the terms of this agreement with respect to the resulting business.

2. "Confidential Information" means any information relating to the Company disclosed by the Parties to the other Party, either directly or in writing, orally, electronically, on magnetic media, or by inspection of the physical plant, equipment or tangible objects, including without limitation documents, prototypes, samples, research, formulas, technical know-how, processes, development, patents, trademarks, copyrights, inventions, designs, computer software code, industrial property rights, marketing plans and strategies, customers, business plans, profits, costs, pricing, financial data and information, procedures and all other information relating to the business of such Party or its employees, suppliers, vendors, independent contractors or others with whom such Party transacts business (the "Confidential Information"). Confidential Information shall also include information disclosed to either Party by third parties where such third party is subject to a confidentiality agreement with a Party that applies to such information. All of the foregoing information constitutes Confidential Information without regard to any labeling of such materials as confidential or other statement that such materials are confidential. Confidential Information shall not, however, include any information which either Party can establish (i) was publicly known and made generally available in the public domain prior to the time of disclosure to either Party by the other Party; (ii) becomes publicly known and made generally available after disclosure by the disclosing Party to the other Party except if such public disclosure occurs as a result of a direct or indirect breach of this Agreement by either Party; or (iii) was in the possession of either Party, without confidentiality restrictions, at the time of disclosure by the disclosing Party as shown by recipient Party's files and records immediately prior to the time of disclosure.

3. Non-Use and Non-Disclosure. The Parties agree not to use any Confidential Information for any purpose except to evaluate and engage in discussions concerning a potential business relationship between the Parties or as required by a resulting ongoing business relationship between the Parties. The Parties agree not to disclose any Confidential Information to third parties or to employees, financial advisors, attorneys, accountants, other advisors and/or agents ("Representatives") of either Party, except to those Representatives who (i) are required to have the information in order to evaluate or engage in discussions concerning the contemplated business relationship or to accomplish the purposes of a resulting ongoing business relationship and (ii) who have been informed of the confidential nature of the Confidential Information and will agree to keep such information confidential in accordance with the terms of this Agreement. Specifically, and without waiving, truncating or limiting the other language in this Agreement, the Parties SHALL NOT USE OR DISCLOSE any Confidential Information (including

but not limited to financial information, quotes, pricing or other business information) of the other Party for the purpose of conducting business with or for any third party, harming the non-disclosing Party's business, or informing any third party of the contents of the non-disclosing Party's Confidential Information. The Parties agree that, during the evaluation period for any business opportunity, without the prior written consent of the other Party, neither Party will disclose the fact that Confidential Information has been made available to it, that discussions or negotiations are taking place concerning a possible transaction between the Company and the Recipient or any other facts with respect thereto.

4. <u>Maintenance of Confidentiality</u>. The Parties agree that they shall take all reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information. Without limiting the foregoing, the Parties shall take at least those measures that they take to protect their own most highly confidential information and shall have their employees who have access to Confidential Information sign a non-use and non-disclosure agreement in content substantially similar to the provisions hereof, prior to any disclosure of Confidential Information to such employees. The Parties shall not make any copies of Confidential Information unless the same are previously approved in writing by the other Party. If contained in the original or supplied by the disclosing party in writing, the Parties shall reproduce each Party's respective proprietary rights notices on any such approved copies. Each Party shall immediately notify the other Party in the event of any unauthorized use or disclosure of the Confidential Information.

5. <u>Required Disclosure</u>. In the event that either Party is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Confidential Information, such Party shall provide the other Party with prompt notice of any such request or requirement so that the other Party may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that either Party is legally compelled to disclose any portion of the Confidential Information, such Party may only disclose that portion of the Confidential Information which counsel advises it is legally required to disclose. Each Party agrees that it will cooperate with the other to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded to the Confidential Information by such tribunal.

6. <u>No Obligation</u>. Nothing herein shall obligate either Party to proceed with any transaction or business relationship between them, and each Party reserves the right, in their sole discretion, to terminate the discussions and evaluations contemplated by this Agreement concerning such business opportunity.

7. <u>No Warranty</u>. ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS". NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, COMPLETENESS OR PERFORMANCE.

8. <u>Return of Materials</u>. All documents and other tangible objects containing or representing Confidential Information and all copies thereof which are in the possession of either Party shall be and remain the property of the disclosing Party and shall be promptly returned to disclosing Party upon disclosing Party's request.

9. <u>Rights to Confidential Information</u>. Nothing in this Agreement is intended to grant any rights to either Party to any intellectual property of the other, including without limitation to any patent, trademark or copyright of the other Party, nor shall this Agreement grant either Party any license or other rights in or to Confidential Information except as expressly set forth herein. Nothing in this Agreement shall be deemed to create an obligation to disclose Confidential Information.

10. Term. This Agreement shall survive until such time as all Confidential Information disclosed hereunder becomes publicly known and made generally available through no action or inaction of either Party.

11. Remedies. Each Party agrees to be responsible for any breach of this Agreement by its Representatives. Each Party agrees that any violation or threatened violation of this Agreement by itself or any of its Representatives will cause immediate and irreparable injury to the other Party, entitling the other Party to obtain injunctive relief, specific performance or other equitable relief in addition to all legal remedies, plus reasonable attorney's fees and costs incurred in obtaining any such relief. Each party expressly waives any right to claim that any breach of this Agreement is adequately compensable in monetary damages.

12. Governing Law; Submission to Jurisdiction. This Agreement shall be governed by the laws of the State of Texas, without reference to conflict of laws principles. The Parties hereto irrevocably submit to the jurisdiction and venue of the appropriate court in the state of Texas in any action or proceeding arising out of or relating to this Agreement, and irrevocably agree that all claims in respect of any such action or proceeding may be heard and determined in such court.

13. Miscellaneous. This Agreement shall bind and inure to the benefit of the Parties hereto and their successors and assigns. This document contains the entire agreement between the Parties with respect to the subject matter hereof. Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision hereof. This Agreement may not be amended, nor any obligation waived, except by a writing signed by both Parties hereto.

IN WITNESS WHEREOF, this Agreement has been executed and delivered by the undersigned parties as of the day and year first written above.

Premier Electronics, LLC

By: _____    By: _____

Name: Jack Teel                Name: Shawn Griffith

Title: Regional Mgr.           Title: President

Please return the executed Agreement to:

Premier Electronics, LLC
c/o Shawn P Griffith
3360 Wiley Post Ste 150
Carrollton, Tx 75006

Revised 4/7/14

3 of 3

Initial

PREMIER - 7