## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PREMIER ELECTRONICS, L.L.C, | ) | |
| | ) | |
|         Plaintiff, | ) | CASE NO. 3:18-cv-2036-S |
| v. | ) | |
| | ) | |
| ADT LLC, | ) | |
| | ) | |
|         Defendant. | ) | |
| | ) | |

## ADT'S MOTION TO STRIKE PREMIER ELECTRONICS' PREVIOUSLY UNDISCLOSED WITNESSES AND EXHIBITS

On October 10, 2017, Plaintiff Premier Electronics ("Premier") filed this lawsuit against Defendant ADT LLC. On March 2, 2018, Premier and ADT exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). In light of these disclosures, ADT developed and implemented its discovery strategy for this action, serving numerous requests for production and interrogatories on Premier, issuing third-party subpoenas to relevant non-parties, and deposing relevant witnesses in light of this written discovery. ADT then submitted its Motion for Final Summary Judgment [ECF No. 23], which this Court subsequently granted in part. *See* July 22, 2020 Memorandum Order and Opinion [ECF No. 56]. With discovery closed and all dispositive motions ruled upon, ADT finalized its trial strategy.

Now, over thirteen months after the close of discovery pursuant to the Court's Agreed Scheduling Order [ECF No. 18] and with under 45 days until trial in this matter, Premier, for the first time, has disclosed *twenty* additional witnesses that were either never previously disclosed to ADT or insufficiently disclosed pursuant to Rule 26(a)(1), as well as four new exhibits neither previously disclosed to ADT nor produced during discovery in this matter. These last-minute

disclosures undermine the letter and spirit of the Federal Rules of Civil Procedure and this Court's Agreed Scheduling Order, and radically impact the nature of the case ADT had prepared to try. Because the prejudice created by Premier's ambush tactics cannot be cured, these witnesses and exhibits should be stricken.

## I.      BACKGROUND

This lawsuit arises from Premier's failure to maintain its residential security alarm monitoring customers at Phillips Creek Ranch ("PCR"), a planned community located in Frisco, Texas. Shortly after the PCR Community Association selected ADT to replace Premier as PCR's bulk security monitoring services provider, Premier filed the instant action asserting various claims for tortious interference and conspiracy against ADT. After ADT removed Premier's lawsuit to federal court for the second time, the parties began discovery in earnest.[1]

The parties exchanged Rule 26(a)(1) Initial Disclosures on March 2, 2018. In its disclosures, Premier identifies ten *categories* of individuals "who may have discoverable information." *See* Plaintiff Premier Electronics LLC's Rule 26(a)(1) Initial Disclosures (Premier's "Initial Disclosures"), at 1-3, attached hereto as **Exhibit 1**. Premier failed to provide even a summary-level description of the information each individual would be able to testify to. *Id*. Premier instead opted to provide ADT with lists containing the names of hundreds of individuals that may have at some point had some level of interaction with either Premier, ADT, PCR, Insight, or numerous other entities involved in the development of the PCR community. *Id*. In total, Premier's Initial Disclosures contain the names of over 900 individuals that may have information

---

[1] ADT's multiple efforts to remove this case to federal court were caused by Premier's naming and subsequent failure to serve Insight Association Management as a defendant in this matter. Insight is a third party hired to provide community management services to PCR.

purportedly relevant to either Premier's claims or ADT's defenses, although it is impossible to determine who would be able to speak to what subject matter based upon the information contained in Premier's Initial Disclosures.[2] *Id.* at 9-35.

Faced with Premier's ambiguous disclosures, ADT served written discovery on Premier in the form of requests for production, interrogatories, and requests for admission. In addition, ADT served Rule 45 subpoenas on third parties Phillips Creek Ranch Community Association and Insight Association Management. Based on the information revealed through this discovery, ADT deposed Premier's founder and chief executive Shawn Griffith, as well as Premier's disclosed expert Phillip Courtney Hogan. ADT then filed its Motion for Final Summary Judgment [ECF No. 23], which this Court subsequently granted in part. *See* July 22, 2020 Memorandum Order and Opinion [ECF No. 56]. With trial set to begin on May 4, 2020, ADT began its trial preparation in earnest. Accordingly, on April 3, 2020, ADT filed its Trial Exhibit and Witness Lists [ECF Nos. 47 and 48, respectively].

This Court continued the May 4, 2020 trial setting because of the COVID 19 pandemic. *See* Order Granting Motion for Clarification [ECF No. 53]. In late-October, the Court reset trial for the current February 2, 2021 trial calendar and required the parties to make their respective pretrial disclosures on or before December 4, 2020. *See* Electronic Amended Scheduling Order [ECF No. 57]. At no point between the beginning of fact discovery in March 2018 and the close of fact discovery in November 2019 did Premier ever amend the witness and exhibit lists contained

---

[2] In its Initial Disclosures, Premier sorts these lists of individuals into ten categories: Premier Employees (29 individuals), ADT Employees (8 individuals), Insight Association Management Employees (4 individuals), PCR Employees/Representatives (3 individuals), Republic Property Group Employees (11 individuals), PCR Community Association Employees/Representatives (1 individual), PCR Homeowners (over 800 individuals), Independent Contractors (8 individuals), Dispatch Center Employees (1 individual), and Building Company Employees/Representatives (65 individuals). *See generally* Premier's Initial Disclosures.

within its Initial Disclosures.

On December 4, 2020, Premier filed its Rule 26(a)(3)(A) Disclosures [ECF No. 58] (Premier's "Pretrial Disclosures"), attached hereto as **Exhibit 2**. For the first time, Premier disclosed five additional witnesses in support of its case-in-chief: Doug Danley, Jack Teel, Sean O'Keefe, Keith Patterson, and Patrick Vedra. *Id*. at 2-3. And, in stark contrast to the lack of information provided in Premier's Initial Disclosures, the Pretrial Disclosures contained a description of the specific testimony each witness is poised to provide at trial. To wit:[3]

- **Doug Danley**      Mr. Danley is a Premier employee who will testify as to his day-to-day activities working for Premier at the Phillips Creek Ranch community and how ADT's tortious interference affected Premier's ability to perform its contracts with its customers in Phillips Creek Ranch.

- **Jack Teel**      Mr. Teel is a former Strategic Account Sales Manager and Regional Director for ADT who will testify about ADT's intense interest in Premier's business model, ADT's interest in acquiring Premier's customer accounts a Republic Property Group's master-planned communities in North Texas, and the Non Circumvention Agreement he signed with Premier on ADT's behalf.

- **Sean O'Keefe**      Mr. O'Keefe is a security industry veteran who is expected to testify about his conversations with Republic Property Group concerning its bulk-billing arrangement with Premier.

- **Keith Patterson**      Mr. Patterson is a former employee of Devcon Security System who is expected to testify as to Devcon's business model which was similar to Premier's bulk-billing model, ADT's interest in and efforts to compete with Devcon, and ADT's eventual acquisition of Devcon for $148.5 million in order to gain a foothold in this new business model in the residential alarm services industry. He is expected to testify that ADT had no successful business in Texas using

---

[3] Premier also disclosed for the first time Premier employee Amber Turner. *Id*. at 5. Ms. Turner is proffered solely to testify as to "documents used by Premier in its business and compilations of data." *Id*. To the extent that Ms. Turner is to provide testimony outside of her role as a records custodian, ADT also includes such testimony within the instant Motion to Strike.

|   | | a bulk billing model, or similar community-based model, until Phillips Creek Ranch despite its efforts to develop such business. |
|---|---|---|
| ▪ | **Patrick Vedra** | Mr. Vedra is a former employee of Republic Property Group who will testify as to his communications with Premier confirming that Republic's understanding and interpretation of key terms of the Security System Agreements governing the Phillip Creek Ranch and Light Farms master-planned communities matches Premier's understanding and interpretation of those terms. |

*Id*. None of these witnesses appear on Premier's Initial Disclosures. Nor do any of these witnesses appear in Premier's discovery responses, the deposition testimony and multiple affidavits provided by Mr. Griffith, or the various expert reports provided by Mr. Hogan.

Premier also disclosed the names of five Premier employees and/or former employees it intends to call at trial: Terry Day, Chris Cahill, Dave Tillotson, Ronnie James, and Melissa Dickerson. Messrs. Day, Cahill, Tillotson, and James are each described as prepared to provide identical testimony, i.e. "day-to-day activities working for Premier at the Phillips Creek Ranch community and how ADT's tortious interference affected Premier's ability to perform its contracts with its customers in Phillips Creek Ranch." *Id*. Ms. Dickerson's proposed testimony is nearly identical: "Ms. Dickerson is a former Premier employee who may testify as to communications with Premier's customers at Phillips Creek Ranch, how ADT's actions tortiously interfered with Premier's relationships with those customers, and what she saw and heard at a meeting of homeowners at Phillips Creek Ranch attended by ADT representatives." *Id*. at 3. While Premier previously disclosed the *names* of these five individuals among the 900-plus names of individuals listed in its Initial Disclosures, Premier failed to provide a description of the relevant knowledge each individual possessed in its Initial Disclosures or during any phase of discovery in this matter.

Similarly, Premier's Pretrial Disclosures include nine PCR residents Premier intends to

call at trial: Wafer Gamil, Thomas Pritchard, Elaine Roberts, Jason Landkamer, Ryan Fuchs, Christopher Robertson, Andy Yandell, Jenifer Yandell, and Joe Bruce. These individuals were similarly improperly disclosed in Premier's Initial Disclosures. While their names may appear somewhere in the lists of homeowners provided, Premier's Initial Disclosures contain the names of over *800 individual* homeowners/residents in Phillips Creek Ranch who received some level of services from Premier at some indeterminate point in time during Premier's tenure at PCR. The Initial Disclosures did not indicate whether each resident received any services from Premier other than those paid for directly by the PCR Community Association; whether the resident was a current customer of Premier or had previously cancelled their Premier-provided services; or, if the resident continued to receive services from Premier at the time ADT was awarded the PCR bulk monitoring business, whether that customer actually transitioned their services to ADT. Indeed, far from providing a description of the subjects of information each resident may have relevant to Premier's claims or ADT's defenses, Premier's Initial Disclosures put ADT on notice of nothing more than the names and contact information of 800-plus individuals who lived in PCR at one point in time. Nor does any substantive discussion of the information possessed by these individuals appear in Premier's interrogatory responses, despite several questions that directly implicate the testimony each is proffered to provide. *See* Premier's Answers to Defendant ADT's First Interrogatories at Answers 4, 5, 6, 9, 10, and 16, attached hereto as **Exhibit 3**.

Finally, Premier's Pretrial Disclosures also include four exhibits neither previously disclosed nor previously produced to ADT during discovery: a Photograph Taken June 9, 2020 at 1569 Cedar Ranch in PCR (Ex. No. 25), a Light Farms Security System Agreement (Ex. No. 38), an Exemplar Light Farms Security Monitoring Agreement (Ex. No. 39), and a Demand Letter to Danielle Page (Ex. No. 40). *Id*. at 7-8.

## II.    ARGUMENT

### A.  Legal Standard

Under Rule 26(a)(1), a party must make certain initial disclosures within the early stages of litigation without awaiting a discovery request. *See* Fed. R. Civ. P. 26(a). This includes a duty to disclose "each individual likely to have discoverable information—along with the subject of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). A "party is not excused from making its disclosures because it has not fully investigated the case . . .." Fed. R. Civ. P. 26(a)(1)(E). Further, Rule 26(e) requires that a "party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure response." Fed. R. Civ. P. 26(e); *see also Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 764 (5th Cir. 1989). Supplemental disclosures shall be made "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2018 WL 3616921, at *2 (N.D. Tex. July 26, 2018). "The 'sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *JMC Constr. LP v. Modular Space Corp.*, No. 3:07-CV-01925-B, 2008 WL 11425650, at *3 (N.D. Tex. Oct. 28, 2008) (quoting *David v. Caterpillar,*

*Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

### B. Premier's Untimely Disclosures Have Unfairly Prejudiced ADT

Premier's untimely disclosures violate Rule 26(a) and should be stricken. In determining whether a violation of Rule 26 is harmless or substantially justified, the district court's decision is to be guided by the consideration of four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A & M. Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 401–02 (5th Cir. 2003). "If the party required to make the disclosure would need the material to support its own contentions, the more effective enforcement of the disclosure requirement will be to exclude the evidence not disclosed ..." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996) (quoting Fed. R. Civ. P. 37 advisory committee's notes).

Each of these factors supports striking Premier's untimely disclosed witnesses and exhibits. First, Premier cannot justify its failure to properly and timely disclose these witnesses and documents. Both Premier and its counsel have been thoroughly involved with the PCR relationship since before the filing of this lawsuit and thus have had adequate knowledge of each of the belatedly disclosed witnesses and exhibits since at least April 2016, far before the parties first exchanged initial disclosures in March 2018. Indeed, this information was solely within the custody and control of Premier, and neither Premier's disclosures nor its discovery responses contain any indication that Premier intended to call these witnesses or introduce these documents as exhibits at trial in support of its claims.

In addition, Premier's last-minute disclosure of witnesses and exhibits it has known about for at least the previous five years itself indicates that none of the information to be provided

thereby is material to Premier's claims. These witnesses and exhibits were not described in any of Premier's written discovery responses. Nor did Premier's corporate representative/chief executive Shawn Griffith or its disclosed expert Philip Hogan discuss the subject-matter knowledge of any of these individuals or the relevance of these documents during their respective depositions. In contrast, because the full scope of the testimony to be provided by each witness is unknown to ADT, as is the testimony Premier intends to support with the untimely disclosed exhibits, ADT finds itself forced to prepare for a quintessential trial-by-ambush. *See, e.g., Fuller v. Werner Enterprises, Inc.*, No. 3:16-CV-2958-BK, 2018 WL 10380370, at \*2 (N.D. Tex. Nov. 29, 2018) ("Compliance with the Rule ensures a party is not ambushed at trial.") (cleaned up).

Moreover, these last-minute disclosures are a continuation of Premier's slap-dash approach to discovery that has prejudiced ADT throughout this litigation. As described in ADT's Motion to Strike Premier's Untimely Expert Report [ECF No. 26], Premier has again and again failed to timely provide ADT with the information required under the Federal Rules and this Court's Agreed Scheduling Order. Instead, Premier's discovery strategy has forced ADT time and again to pursue Premier for the discovery information mandated by the Rules. And just as Premier has done here, when it ultimately produces potentially relevant information, it does so only long after the information was required to be disclosed, assuring Premier of the tactical advantage and optimal unfair prejudice to ADT. It is for this reason that this Court ultimately struck Premier's untimely expert report, itself disclosed four months after the court-mandated deadline to exchange expert disclosures and *the day before* Premier's expert was to be deposed. *See* Memorandum Opinion and Order [ECF No. 54] at 8 ("ADT is entitled to defend this case and not be forced to respond to a damages opinion that is ever-changing. Premier has failed to show that its noncompliance with the scheduling order is justified or harmless. ADT's motion is granted.").

The parties exchanged Rule 26(a)(1)(A) initial disclosures on March 2, 2018. *Id*. at 3-4. This Court's Agreed Scheduling Order further required all fact and expert discovery to close by November 22, 2019. *Id*. ADT filed its own witness and exhibit disclosures on April 3, 2020. At no point between the March 2018 exchange of initial disclosures and the close of fact discovery on November 22, 2019, or even at the time of the previous May 2020 trial setting, has Premier amended its Initial Disclosures to properly place ADT on notice of the potentially discoverable information possessed by these witnesses and contained in these documents. Indeed, other than the descriptions provided by Premier in its Pretrial Disclosures, ADT can only speculate as to how these witnesses or exhibits are relevant to Premier's claims or how this information may conflict with or supplement ADT's defenses.

Trial is set to begin in less than 45 days. Granting a continuance in order for ADT to further explore Premier's improperly disclosed witnesses and documents will serve only to exacerbate, rather than mitigate, the prejudice suffered by ADT. ADT contends that Premier's claims are meritless and has attempted to drive this case forward to resolution as steadily as possible. By definition, a continuance will serve only to further delay disposition of Premier's claims. ADT has diligently conducted its own discovery in this case and has already moved for and received a ruling with respect to summary judgment on Premier's claims. With the Court's rulings on ADT's dispositive motion in hand, ADT is prepared to present its defenses and argue its case before the jury in February 2021. A continuance at this point would potentially open up a Pandora's Box of additional discovery and motion practice—including re-visitation of ADT's Motion for Summary Judgment—at a point when the parties should be focusing their resources on trial preparedness.

ADT did not bring this lawsuit against Premier. Nevertheless, ADT has done its part to make itself trial ready. ADT devised its case theory based on the witnesses and documents

disclosed by Premier during discovery and in accordance with the Federal Rules and Agreed Scheduling Order. ADT should not now be forced to re-examine its entire defense and conduct last-minute discovery to accommodate Premier's continued disregard for the requirements of the Federal Rules and the Agreed Scheduling Order. Premier's previously undisclosed witnesses and exhibits should be stricken. *See, e.g., JMC Constr.*, 2008 WL 11425650, at *4 ("In sum, ModSpace's wholesale disregard for the discovery rules and discovery deadlines in this case provides ample justification for excluding the evidence ModSpace failed to bring forth until a month after discovery had closed.").

## III.   Conclusion

For these reasons, the Court should enter an order striking Premier witnesses Doug Danley, Jack Teel, Sean O'Keefe, Keith Patterson, Terry Day, Chris Cahill, Dave Tillotson, Ronnie James, Melissa Dickerson, Wafer Gamil, Thomas Pritchard, Elaine Roberts, Jason Landkamer, Ryan Fuchs, Christopher Robertson, Andy Yandell, Jenifer Yandell, Joe Bruce, Amber Turner, and Patrick Vedra; as well as exhibit numbers 25, 38, 39, and 40, and award any additional relief the Court deems just and proper.


Dated December 28, 2019                           Respectfully submitted,

                                        By: */s/ Eric S. Boos*
                                            Eric S. Boos (*Pro Hac Vice*)
                                            SHOOK, HARDY & BACON LLP
                                            Citigroup Center
                                            201 S. Biscayne Blvd., Suite 3200
                                            Miami, FL 33131-4332
                                            Telephone: 305-358-5171
                                            Facsimile: 305-358-7470
                                            esboos@gmail.com

                                            Tanya L. Chaney
                                            Texas Bar No. 240363375

SHOOK, HARDY & BACON LLP
JPMorgan Chase Tower
600 Travis Street
Suite 3400
Houston, TX 77002-2926
Telephone: 713-227-8008
Facsimile: 713-227-9508
tchaney@shb.com

***Attorneys for Defendant ADT LLC***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), Eric S. Boos, counsel for ADT, conferred with counsel for Premier via teleconference on December 23, 2020 to determine whether Premier agrees to withdraw the above-referenced witnesses and exhibits. Premier declines to do so at this time.

/s/ Eric S. Boos
Eric S. Boos