UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PREMIER ELECTRONICS, LLC, | ) |
| | ) |
| Plaintiff, | )   CASE NO. 3:18-cv-2036-S |
| v. | ) |
| | ) |
| ADT LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT ADT LLC'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PREVIOUSLY EXCLUDED DAMAGES**

Defendant ADT LLC respectfully moves this Court to exclude *in limine* all testimony and exhibits that relate to damages this Court previously ruled are unavailable to Plaintiff Premier Electronics, LLC ("Premier") in this action, and in support states as follows:

**A.   FACTUAL BACKGROUND**

In 2012, Premier and the Phillips Creek Ranch Community Association (the "Association") entered into a contract by which Premier agreed to provide basic alarm monitoring services to the residents of Phillips Creek Ranch (the "Bulk Monitoring Agreement"). The Association paid for these basic monitoring services on a per-household basis, and Premier invoiced the Association an agreed-upon amount on a monthly basis for each home to which it provided such services. If an individual homeowner wanted to supplement this basic alarm monitoring with additional, ancillary services such as cellular signal transmission or fire alarm monitoring, he or she was permitted to do so under the Bulk Monitoring Agreement at his or her own expense.

On April 21, 2016, the Association terminated Premier as Phillips Creek Ranch's bulk alarm monitoring provider. The Association subsequently selected ADT as Premier's replacement.

1

Displeased that it had lost in fair-market competition, Premier sued ADT soon after. In its operative pleading, the First Amended Complaint (the "FAC"), Premier asserted seven causes of action against ADT:

- **Count 1** – Tortious interference with existing contracts with PCR Homeowners;
- **Count 2** – Tortious interference with prospective business relations with PCR Homeowners;
- **Count 3** – Tortious interference with existing contracts with the Developer and the Association;
- **Count 4** – Tortious interference with existing prospective relations with builders;
- **Count 5** – Tortious interference with prospective business relations with Walsh
- **Count 6** – Exemplary damages; and
- **Count 7** – Civil conspiracy.

*Premier's Damages Claims*

In support of its purported damages, Premier disclosed certified public accountant Philip Courtney Hogan as its expert witness. Premier served ADT with Mr. Hogan's initial expert report on October 23, 2019 (the "Initial Report"), over two months after this Court's mandated deadline for Premier to make its expert disclosure. In addition to being late, this Initial Report failed to comply with a number of Rule 26(a)(2)(B)'s requirements. Without seeking leave of ADT or this Court, Premier served ADT with a second report drafted by Mr. Hogan three weeks later (the "Amended Report"). Both Mr. Hogan's Initial Report and his Amended Report opine that Premier's total damages are **$673,570.23**. Mr. Hogan allocated Premier's claimed damages into four categories:

- **Damages Category 1:** Lost profits from "regular security monitoring system and service customers," aka "Regular Customers" in the amount of *$254,477.12*;
- **Damages Category 2:** Lost profits from "cellular residential security monitoring system and service customers," aka "Cellular Customers" in the amount of *$197,245.37*;

2

- **Damages Category 3:** Lost future profits from the Regular Customers in the amount of *$124,776.77*;

- **Damages Category 4:** Lost future profits from the Cellular Customers in the amount of *$97,070.97*;

On the eve of Mr. Hogan's deposition, Premier submitted yet another expert report drafted by Mr. Hogan. This report includes several entirely new opinions related to new categories of damages totaling an additional $3.57 million. Given the numerous violations of both the Federal Rules of Civil Procedure and this Court's Agreed Scheduling Order presented by this third late expert report, ADT moved to strike the opinions contained within in their entirety. *See* ADT's Motion to Strike Plaintiff Premier Electronics' Untimely Expert Report [ECF No. 26]. Holding that Premier's disclosure had unfairly prejudiced ADT, this Court struck Mr. Hogan's third expert report and confined Premier to the four categories of damages described above. *See* Order granting ADT's Motion to Strike [ECF No. 54] ("Accordingly, the Court strikes Premier's expert report dated December 12, 2019. Premier will not be permitted to use the untimely report or any testimony based thereon as evidence."). The direct result of this Order is that Premier is only permitted to present to the jury the four categories of damages contained within the Initial Report and Amended Report.[1]

*This Court Grants ADT Summary Judgment as to Premier's Claim for Tortious Interference with the Bulk Monitoring Agreement*

After the close of discovery, ADT moved for summary judgment on all counts asserted by Premier. *See generally* ADT's Brief in Support of Motion for Final Summary Judgment [ECF No.

---

[1] There should be no doubt that the Court's Order granting ADT's Motion to Strike prohibits Premier from offering any testimony or evidence related to the damages claims contained within Mr. Hogan's December 12, 2019 Expert Report. Nevertheless, to the extent that Premier intends to offer any testimony or exhibits related to the contents therein, ADT's instant motion should be read to exclude all such materials *in limine*.

3

4812-6956-4629

24] (the "Summary Judgment Motion"). Finding that Premier had conceded ADT did not interfere with Premier's contractual relationship with the Association, i.e. with the Bulk Monitoring Agreement, this Court granted ADT's Summary Judgment Motion as to Count 3—tortious interference with existing contracts with the Developer and the Association. *See* Order granting in part ADT's Summary Judgment Motion [ECF No. 56] (the "Summary Judgment Order") at 2-3.

B. ANALYSIS

Premier intends to offer the jury evidence supporting each of the four damages categories described above. In light of the Summary Judgment Order, however, this Court should bar Premier *in limine* from offering any such evidence related to Categories 1 and 3, as this Court has granted summary judgment in favor of ADT as to Premier's claims related to tortious interference with the Bulk Monitoring Agreement, the sole basis for Premier's purported damages in these categories.

As alleged in the FAC, Premier entered into the Bulk Monitoring Agreement with the Association in 2012. *Id*. at ¶ 13. Pursuant to the terms of this agreement, Premier collected a monthly service fee *from the Association* for each Phillips Creek Ranch home to which Premier provided basic security alarm monitoring services.[2] *Id*. There is no dispute that Premier provided these basic services and was compensated by the Association for doing so through the termination of the Bulk Monitoring Agreement.

In his Amended Report, Mr. Hogan refers to the customers receiving these basic services as "Regular Customers." *See* Amended Report at 1-2, attached hereto as **Exhibit 1**. Accordingly,

---

[2] Premier contrasts these "Regular Customers" with those PCR residents to whom it sold additional ancillary services such as cellular alarm signal transmission or fire monitoring, who Premier refers to as "Cellular Customers." *See* Amended Report at 2-3. Damages related to these "Cellular Customers" are contained within Damages Categories 2 and 4. *Id*.

4

Premier's claimed damages related to tortious interference with the Bulk Monitoring Agreement are contained within Damages Category 1. Similarly, Mr. Hogan opines that Premier suffered damages related to losing the ability to renew these basic alarm monitoring services to the Regular Customers as a result of ADT being named as Phillips Creek Ranch's bulk-monitoring provider. *Id.* These claimed damages are contained within Damages Category 3.

In granting ADT summary judgment as to Premier's claim for tortious interference with the Association, i.e. Count 3, this Court noted:

> Premier acknowledges that the evidence shows ADT did not initiate contact with the PCR homeowners' association. Instead, Insight Association Management LP, a property management company hired to manage the homeowners' association, approached ADT. Premier thus concedes that its 'complaints about the notice of non-renewal of the [Bulk Monitoring Agreement] with the Association and the Developer are no longer focused on ADT.

Summary Judgment Order at 3. The Bulk Monitoring Agreement was the sole contractual relationship related to the provision of basic monitoring services to Premier's "Regular Customers." Because Premier has conceded that ADT *did not* interfere with the Bulk Monitoring Agreement, Premier's cannot claim damages for a cause of action the Court dismissed. Indeed, Premier's own expert agrees that these damages are not available to Premier at this time. *See* Dep. of P. Hogan at 56:15-23, attached hereto as **Exhibit 2** ("Q: I'm going to ask you to assume—to assume for purposes of this question that it was a valid termination and that Premier was paid through July 16th of 2016. If that was a valid termination, would Premier have suffered any of these damages that you describe as a result of its regular customers? A: If that was a valid termination under the contract, I would say that there were—that the—*those damages would not exist.*") (emphasis added). Accordingly, Premier cannot recover under any theory the damages it seeks in Damages Category 1.

5

Moreover, Premier's concession that the Association properly exercised its contractual right not to renew the Bulk Monitoring Agreement and that ADT's takeover of the Phillips Creek Ranch relationship was proper also destroys any claim that Premier would have had regarding the renewal of the contract for basic monitoring services provided to Regular Customers. As described above, the Bulk Monitoring Agreement controlled the provision of these services. The only parties to that contract were Premier, the Association, and PCR Land Company, LLC. Given that Premier has conceded that ADT played no part in the Association's termination of this contract, and that the Association's termination was wholly proper, Premier cannot recover for any losses related to "losing the opportunity to renew the contracts for services provided to Regular Customers," i.e. those damages contained within Damages Category 3. *See* Amended Report at 3; *see* also Hogan Dep. at 56:15-23.

Because Premier has conceded that termination of the Bulk Monitoring Agreement was proper, and because this Court has granted ADT summary judgment with respect to Premier's claim for tortious interference with existing contracts with the Developer and the Association (Count 3), Premier cannot recover those damages claimed in Damages Categories 1 and 3. Accordingly, any testimony or other evidence supporting these damages claims must be excluded *in limine*.

### C. CONCLUSION

For the foregoing reasons, ADT's Motion should be granted.

Dated January 11, 2021                                Respectfully submitted,

                                                            By: */s/ Eric S. Boos*
                                                                Eric S. Boos (*pro hac vice*)
                                                                SHOOK, HARDY & BACON LLP
                                                                Citigroup Center

6

> 201 S. Biscayne Blvd., Suite 3200
> Miami, FL 33131-4332
> Telephone: 305-358-5171
> Facsimile: 305-358-7470
> esboos@gmail.com
>
> Tanya L. Chaney
> Texas Bar No. 24036375
> SHOOK, HARDY & BACON LLP
> JPMorgan Chase Tower
> 600 Travis Street
> Suite 3400
> Houston, TX 77002-2926
> Telephone: 713-227-8008
> Facsimile: 713-227-9508
> tchaney@shb.com
>
> Charles C. Eblen (*pro hac vice*)
> SHOOK, HARDY & BACON LLP
> 2555 Grand Blvd.
> Kansas City, Missouri 64108
> Tel: (816) 474-6550
> Fax: (816) 421-5547
> ceblen@shb.com
>
> ***Attorneys for Defendant ADT LLC***

4812-6956-4629