IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREMIER ELECTRONICS, L.L.C., § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | | CASE NO. 3:18-CV-2036-S |
| § | | |
| ADT, L.L.C., § | | |
| *Defendant* § | | |

**PLAINTIFF PREMIER'S RESPONSE TO ADT'S MOTION TO STRIKE PREMIER ELECTRONICS' PREVIOUSLY UNDISCLOSED WITNESSES AND EXHIBITS**

Plaintiff Premier Electronics, L.L.C. ("Premier") files this Plaintiff Premier's Response to ADT's Motion to Strike Premier Electronics' Previously Undisclosed Witnesses and Exhibits.

# I.
# INTRODUCTION

**1.** This case is about a large home security alarm monitoring company—Defendant ADT, L.L.C. ("ADT")—tortiously interfering with a smaller company's customer accounts by lying to those customers and tampering with the smaller company's home security equipment. With the complicity of a property management company, ADT stole these accounts by falsely telling Premier's customers in the Phillips Creek Ranch ("PCR") community:

> **We must program your system for monitoring by ADT before June 21, 2016 to avoid interruption of service.**

Under this fictitious threat of losing their home security service, Premier's PCR customers allowed ADT to remove and to reprogram the security equipment that Premier was using to service its customers, thereby diverting such service to ADT.

## II.
## PROCEDURAL HISTORY

2.	Premier originally filed this lawsuit in Texas state court on October 10, 2017. ADT removed the case to federal court. The parties exchanged Rule 26(a)(1) initial disclosures on March 2, 2018. This case was then remanded to Texas state court, and removed a second time to this court on August 6, 2018. The Court entered an Agreed Scheduling Order in this case on December 14, 2018 [Doc. 18]. Pursuant to the Agreed Scheduling Order, the discovery period closed in this case on November 22, 2019, and this case was originally set for trial on May 4, 2020.

3.	On February 11, 2020, Premier filed Plaintiff Premier's Motion for Continuance and to Modify Scheduling Order with Supporting Memorandum of Law [Doc 31] based upon new factual developments occurring at a separate community known as Light Farms initiated by a written notice sent to Premier on November 15, 2019—one week before the end of the discovery period in this case. This Court denied that motion [Doc. 46].

4.	On March 18, 2020, this Court continued all remaining pretrial deadlines, the pretrial conference and the original trial setting in this case due to the outbreak of the novel COVID-19 [Doc. 50]. At that time, the parties' initial trial witness lists, exhibits lists, and other pretrial materials were not yet due. Although ADT had no obligation to do so, it did nevertheless file a trial exhibit list [Doc. 47] and a trial witness list [Doc. 48]. In its original trial witness list [Doc. 48], ADT identifies 31 trial witnesses by name that ADT did not disclose at all in its own initial disclosures. *See* Ex. A.

5.	On October 23, 2020, this Court entered an Amended Scheduling Order [Doc. 57] resetting this case for trial and setting new pretrial deadlines, including the deadlines for the

parties' initial witness lists and exhibit lists. On January 14, 2021, this Court granted the parties' joint motion for continuance resetting this case to June 2021 [Doc. 77].

## III.
## ARGUMENTS & AUTHORITIES

6. In its motion to strike, ADT claims that five specific witnesses listed in Plaintiff's Rule 26(a)(3)(A) Disclosures [Doc. 58] were not previously disclosed by Premier in its initial disclosures:

- Doug Danley
- Jack Teel
- Sean O'Keefe
- Keith Patterson
- Patrick Vedra

7. One of the five witnesses ADT complains was never identified by Premier is Sean O'Keefe. Mr. O'Keefe is not listed by Premier as probable or possible trial witness in the final Plaintiff's Trial Witness List [Doc. 69]. Therefore, ADT's Motion to Strike is moot as it pertains to him.

8. Two of the five witnesses ADT complains were never identified by Premier are former employees of ADT itself or one of its affiliates. Neither witness has been deposed. Premier intends to call these individuals as adverse witnesses.

9. Jack Teel is a former Strategic Account Sales Manager and Regional Director for ADT. Mr. Teel signed the Non-Circumvention Agreement between Premier and ADT dated July 26, 2016, which was produced in discovery in this case as Premier 1-4, and the Mutual Non-Disclosure and Non-Use Agreement of that same date, which was produced in discovery in this case as Premier 5-7. *See* Ex. B. ADT offers no explanation why it never disclosed Mr. Teel.

10. Keith Patterson is a former employee of DevCon, a company acquired by ADT. Janet McMillan—one of ADT's trial witnesses—is also a former employee of DevCon. Information about this acquisition was discovered and produced by an expert witness in this case in connection with damage calculations made. Premier 15947-15949. Upon information and belief, Mr. Patterson was the Vice President of Operations for DevCon at the time of ADT's acquisition of DevCon. ADT offers no explanation why it never disclosed Mr. Patterson. Both of these witnesses were within ADT's knowledge and subject to ADT's control.

11. The remaining two of the five witnesses that ADT claims were never identified by Premier are in fact identified in Plaintiff Premier Electronics, L.L.C.'s Rule 26(a)(1) Initial Disclosures [Doc. 61-1]. Doug Danley is a Premier employee whose identity is disclosed, along with other Premier employees in Premier's initial disclosures, which are attached to ADT's Motion to Strike. *See* Doc. 61-1, page 11. Patrick Vedra is an employee of Republic Property Group whose identity is disclosed, along with other Republic employees, in Premier's initial disclosures. *See* Doc. 61-1, page 17.

12. Among other things, Mr. Vedra anticipated trial testimony is likely to impeach what Premier reasonably anticipates will be the trial testimony of Rebecca Tarpley. Ms. Tarpley is listed as a possible trial witness by ADT although she was never disclosed by either party as a person likely to have information relevant to this case. To Premier's knowledge, Ms. Tarpley was never involved with PCR or ADT at all, but was the community manager of the Light Farms community.

13. Of the five witnesses ADT claims were not disclosed by Premier,[1] one is no longer listed as a trial witness, two are former employees of ADT or a company ADT acquired, and two are in fact listed in Premier's initial disclosures.

14. In its motion to strike, ADT contends for the very first time in this lawsuit that Plaintiff Premier Electronics, L.L.C.'s Rule 26(a)(1) Initial Disclosures [Doc. 61-1], which were served on March 2, 2018, are defective because they do not adequately disclose the subject of the relevant information certain individuals have.

15. Rule 26(a) requires litigants to disclose various information in advance of trial in an orderly manner, including the exchange of basic information about the case in an accelerated manner. "Through the addition of paragraphs (1)–(4), this subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement. The rule requires all parties (1) early in the case to exchange information regarding potential witnesses, documentary evidence, damages, and insurance, (2) at an appropriate time during the discovery period to identify expert witnesses and provide a detailed written statement of the testimony that may be offered at trial through specially retained experts, and (3), as the trial date approaches, to identify the particular evidence that may be offered at trial." FED. R. CIV. P. 26, Notes of Advisory Committee on 1993 amendments.

16. As the Advisory Committee indicates:

> Subparagraph (A) requires identification of all persons who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties. All persons with such information should be disclosed, whether or not their testimony will be supportive

---

[1] ADT also mentions Amber Turner in footnote 3 of its motion to strike. Ms. Turner was hired by Premier after its initial disclosures were served while this case was pending. As a possible witness, Ms. Turner's anticipated testimony is likely limited to documents she gathered and information she compiled at the request of Mr. Griffith.

of the position of the disclosing party. As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties. Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed.

FED. R. CIV. P. 26, Notes of Advisory Committee on 1993 amendments.

17. Premier followed this process. At the beginning of this, Premier disclosed ALL persons known to Premier which it believed were likely to have discoverable information relevant to the factual disputes between the parties. Obviously, most of the persons identified by Premier were not within or subject to its control. At that early stage of discovery, Premier's knowledge of what specific information each such person was likely to have was limited to the person's connection to the case. So Premier identified such persons by category, e.g., ADT personnel, Premier Electronics-Employees, Premier Electronic-Former Employees, Independent Contractors, Builders, Insight Management, Republic Property Group, PCR Customers, and Alarm Monitoring Dispatch Center. When known, Premier also listed each individual's position or previous position.

18. As a result of the discovery process and its ongoing investigation of the facts, Premier was able to narrow down the universe of individuals likely to have discoverable information to a few dozen potential trial witnesses which it timely disclosed in Plaintiff's Rule 26(a)(3)(A) Disclosures [Doc. 58] with a summary of each potential witness's anticipated testimony. In accordance with the Agreed Scheduling Order, Premier then narrowed this list of potential witnesses down even further to its final Plaintiff's Trial Witness List [Doc 69] of two probable and eleven possible witnesses.

19. ADT's motion to strike was filed before the parties filed their final trial witness lists. Many of the persons included in ADT's motion to strike are not on the final Plaintiff's Trial Witness List [Doc 69]. At the time the motion to strike was filed, counsel were discussing the number of PCR customers listed as potential witnesses by both parties and the likelihood that their live testimony would unduly lengthen and logistically complicate the trial of this matter. On January 11, 2021, the parties submitted their Joint Proposed Pretrial Order in which they stipulated as follows:

> 1. Premier and ADT stipulate that the items originally identified as ADT Exhibit No. 27 (which is a collection of several PCR customer emails, notes, etc.), and the items originally identified as Premier Exhibits 29-36 are admissible evidence at trial in lieu of calling any of those PCR customers mentioned in the exhibits to testify live at trial.

Although this issue was under discussion when ADT's motion to strike was filed, the stipulation was not reached until afterwards.

20. In the motion to strike, ADT complains about several PCR customers listed in Plaintiff's Rule 26(a)(3)(A) Disclosures [Doc. 58]. In light of the stipulation reached by the parties, Wafer Gamil is the only PCR customer remaining as a possible trial witness in Plaintiff's Trial Witness List [Doc. 69]. While Mr. Gamil is identified in Premier's initial disclosures, ADT complains that he is improperly disclosed because he is simply listed as one of the hundreds of Premier's PCR customers. In part, Mr. Gamil's anticipated testimony is purely for impeachment but, in light of certain positions taken by ADT in this case, is reasonably anticipated rebuttal testimony.

21. Notably, prior to filing its motion to strike, ADT never complained to Premier or to this Court that manner in which Premier disclosed the individuals likely to have discoverable information relevant to the factual disputes between the parties was inadequate or insufficient in any way. Under Rule 37(a)(1), "a party dissatisfied with the disclosure made by an opposing

party may under this rule move for an order to compel disclosure." FED. R. CIV. P. 37, Notes of Advisory Committee on 1993 amendments. If ADT genuinely believed that Premier's initial disclosure of individuals likely to have discoverable information was inadequate, ADT had ample opportunity to bring that complaint to Premier's attention and to the Court's attention long before the expiration of the discovery period in this case. Its failure to do so until 33 months after such disclosures were made suggests that its strategy is one of litigation gamesmanship.

22.     With the exception of Messrs. Teel and Patterson, Premier maintains that it adequately disclosed its trial witnesses as individuals likely to have discoverable information and, by categorizing such individuals connection to this case and describing their position or former position, provided ADT with adequate disclosure of the subjects likely to be known by such individuals. Indeed, for 33 months, ADR never complained that the disclosures were inadequate because it was not able to readily discern the subjects likely to be known to such individuals.

23.     With respect to Messrs. Teel and Patterson, Premier's failure to disclose such individuals is justified and harmless because they are both former employees of ADT or its affiliates. Consequently, such individuals' identities were in fact known to ADT. Documents Mr. Teel signed were the very first documents produced by Premier in discovery in this case. ADT and its counsel have had control of both of these individuals and undoubtedly have superior knowledge to that of Premier and its counsel as to what these individuals know. Yet ADT failed to disclose them at all other than through its general statement "Employees, agents, and representatives of ADT."

24.     In its motion to strike, ADT also complains about four specific documents:

- A photograph taken June 9, 2020 at 1569 Cedar Ranch in PCR (Premier 16009)

- A Light Farms Security System Agreement

- An Exemplar Light Farms Security Monitoring Agreement

- A Demand Letter to Danielle Page

None of these documents were requested by ADT in either of its requests for production in this case.

25.     The photograph is attached to this response as Exhibit C.  As indicated in its description, the photograph did not exist when the discovery period closed in this case because it was taken after the discovery period closed.  Promptly upon learning of the existence of this photograph and realizing its relevance to this case, Premier produced it to ADT's counsel. Essentially, what happened was a customer living in PCR at 1569 Cedar Ranch called Premier for a service call in June 2020.  The service technician who answered that call took a photograph of the control panel of the alarm system at the customer's home.  Because this is one of the customers ADT tricked into allowing ADT to reprogram and reroute the security system, Premier did not have access to that home prior to receiving the service call.  ADT, on the other hand, did have access to that customer's home, as the photograph shows ADT's equipment piggybacking off Premier's equipment in order to divert the alarm monitoring service for this customer.

26.     The Light Farms documents were not requested in discovery because Premier's complaint does not include any claims against ADT for tortious interfere with the Light Farms community.  Premier's Security System Agreement with Light Farms was initially virtually identical to the one in PCR.  Before this lawsuit was filed, that agreement had automatically renewed for a second three-year term through February 19, 2020.  At the time of the pleading deadline in this case, there was no evidence it had successfully done so.  With the renewal of its

bulk-billing agreement and a Non-Circumvention Agreement signed by ADT with respect to Light Farms, Premier was reasonably confident that ADT had not and would not interfere with its existing contracts and prospective relations and ADT had caused no damages to Premier in Light Farms.

27. It was not until February 2020 that ADT received information indicating that ADT was attempting to interfere with Premier's relations with its Light Farms customers. At that time, Premier learned that sales representatives for ADT had begun to aggressively market ADT's competing services to Premier's customers in Light Farms. Once again, ADT has done so by lying to Premier's customers. One Premier customer in Light Farms, Judy Kincaid, has told Premier in a recorded telephone conversation that the ADT sales representative told her that "Premier has been sold to another company," and that "it was not a local company." These statements are, of course, false, and ADT knows they are false. Premier has not been sold to another company, and Premier is a local company. This recording was promptly provided to ADT's attorney. Premier previously moved in this case to reopen discovery and to modify the scheduling order so it could address any claims it may have against ADT with respect to Light Farms in this action [Doc. 31], but this Court denied that request [Doc. 47].

28. Premier is seeking legal recourse with respect to the Light Farms community, and counsel for ADT is representing the defendants in that action. Counsel for ADT has successfully moved to compel arbitration in that other action, attaching a redacted copy of the Light Farms Security System Agreement as an exhibit to their Motion. *See* Ex. D. So ADT's counsel clearly has a copy of that agreement in its actual physical possession.

29. Danielle Page has been identified by ADT as one of its possible trial witnesses in this case. Ms. Page is a former employee of Premier who was terminated for cause on March 13,

2018.  The demand letter concerns money owed by Ms. Page to Premier.  Premier has listed this exhibit as a possible trial exhibit in the event that Ms. Page does testify to impeach her for bias as a disgruntled former employee who owes Premier money.

30. Because ADT did not request production of these four exhibits in the discovery process, Premier had no obligation to produce them previously in this case.  Accordingly, such exhibits should not be excluded.

## PRAYER

For the foregoing reasons, Plaintiff Premier requests that the Court deny Plaintiff Premier's Response to ADT's Motion to Strike Premier Electronics' Previously Undisclosed Witnesses and Exhibits in its entirety.  Plaintiff Premier prays for general relief.

Respectfully submitted,

*/s/ John M. Frick*

_____
**John M. Frick**
Texas Bar No. 07455200
*jfrick@bennettweston.com*

**BENNETT, WESTON, LAJONE & TURNER, P.C.**
1603 LBJ Freeway, Suite 280
Dallas, Texas  75234
Tel:    (972) 662-4901
Fax:    (214) 393-4043

**ATTORNEY FOR PLAINTIFF
PREMIER ELECTRONICS, L.L.C.**

## CERTIFICATE OF SERVICE

       This is to certify that a true and correct copy of the foregoing Plaintiff Premier's Response to ADT's Motion to Strike Premier Electronics' Previously Undisclosed Witnesses and Exhibits has been furnished to the following counsel in accordance with the Federal Rules of Civil Procedure, this 22nd day of January 2021:

Eric S. Boos
SHOOK, HARDY & BACON, L.L.P.
Citigroup Center
201 S. Biscayne Blvd., Suite 3200
Miami, FL  33131-4332
esboos@gmail.com

Tanya L. Chaney
SHOOK, HARDY & BACON, L.L.P.
JPMorgan Chase Tower
600 Travis St., Ste. 3400
Houston, TX  77002-2926
tchaney@shb.com

Charles C. Eblen (*Pro Hac Vice*)
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
ceblen@shb.com

                    */s/ John M. Frick*
                    John M. Frick