IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREMIER ELECTRONICS, L.L.C., §<br>  *Plaintiff* §<br>§<br>v. §<br>§<br>ADT, L.L.C., §<br>  *Defendant* § | | CASE NO. 3:18-CV-2036-S |

**PLAINTIFF PREMIER'S AMENDED
RESPONSE TO ADT LLC'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF PREVIOUSLY EXCLUDED DAMAGES**

Plaintiff Premier Electronics, L.L.C. ("Premier") files this Plaintiff Premier's Amended Response to ADT LLC's Motion in Limine to Exclude Evidence of Previously Excluded Damages [Doc. 70].

**I.
INTRODUCTION**

**1.** This case is about a large home security alarm monitoring company—Defendant ADT, L.L.C. ("ADT")—tortiously interfering with a smaller company's customer accounts by lying to those customers and tampering with the smaller company's home security equipment. With the complicity of a property management company, ADT stole these accounts by falsely telling Premier's customers in the Phillips Creek Ranch ("PCR") community:

> **We must program your system for monitoring by ADT before June 21, 2016 to avoid interruption of service.**

Under this fictitious threat of losing their home security service, Premier's PCR customers allowed ADT to remove and to reprogram the security equipment that Premier was using to service its customers, thereby diverting such service to ADT.

## II.

## ARGUMENTS & AUTHORITIES

2. In its Motion, ADT asks the Court to exclude all testimony and exhibits that relate to damages this Court previously ruled are unavailable to Premier. Premier's short answer to this Motion is that this Court has not previously ruled that any damages are unavailable to Premier. On July 22, 2020, this Court entered a Memorandum Opinion and Order granted ADT's motion for summary judgment only as to Premier's third claim: tortious interference with the existing contract with PCR's developer and homeowners' association [Doc. 56]. In doing so, the Court correctly noted that Premier concedes it "complaints about the notice of non-renewal of the bulk-billing Agreement with the Association and the Developer are no longer focused on ADT." [Doc. 56, pp. 2-3]. Otherwise, this Court denied ADT's motion for summary judgment on each of Premier's other causes of action and on its allegation of a conspiracy between ADT and Insight.

2. ADT also previously moved to strike Premier's expert witness Phillip Courtney Hogan. This Court denied that Motion [Doc. 55]. ADT also moved to strike one of three written damage reports prepared by Phillip Courtney Hogan on the ground that it is untimely and caused ADT unfair prejudice. That report dated December 12, 2019, attempted to quantify three new categories of damages: 1) future lost cash flow related to the provision of basic alarm monitoring and cellular signal transmission for about 2000 unbuilt homes in the amount of $904,001.42; 2) profits from sales of home theater and Wi-Fi to the approximately 2000 unbuilt homes in the amount of $2,161,991.99; and 3) future lost revenue for smart home systems in the amount of $1,411,449.90. This Court granted that motion to strike, and Premier does not intend to offer the expert testimony of Mr. Hogan on those three categories of damages. It may,

however, offer testimony from Shawn P. Griffith on those categories of damages. Mr. Griffith has been identified as an expert witness in the home security and integration industry and ADT has not challenged his unassailable qualifications as an expert in this area.

3. ADT did not ask this Court to strike Mr. Hogan's first two damage reports which identify the damages Premier suffered as a result of ADT's interference from 1) the loss of regular residential security monitoring system and service customers; 2) the loss of cellular residential security monitoring system and service customers; 3) loss of the opportunity to renew contracts for services provided to regular customers; and 4) loss of the opportunity to renew contracts for services provided to cellular customers. These damages relate to Premier's first and second causes of action for 1) tortious interference with existing contracts with PCR homeowners; and 2) tortious interference with prospective relations with PCR homeowners.

4. In its Motion, ADT refers this Court to page 56, lines 15-23 of the oral deposition of Mr. Hogan, but does not attach that page to its Motion. Those lines 12-24 of that page of Mr. Hogan's deposition read as follows:

```
12          Q (BY MR. BOOS) Mr. Hogan, do you have any
13     knowledge as to whether or not the Phillips Creek Ranch
14     paid Premier in full for the monitoring services
15     provided by Premier through July 2016?
16          A I believe I understand they have.
17          Q Okay. Are those payments --
18          A Not --
19          Q -- reflected in your -- any of your
20     schedules?
21          A No.
```

```
22            Q Okay. Okay. Let's talk about the security
23       monitoring net revenue schedule. Okay?
24            A Okay.
```

*See* Exhibit A.  It is clear in context that Mr. Hogan is referring to payments due to Premier under the bulk-billing agreement from the Association, and not to the damages caused by ADT in interfering with Premier's existing contract and prospective relations with PCR customers.

     **5.**    In addition to the above deposition testimony, Mr. Hogan addressed why there would still be damages to Premier in the event of a non-renewal of the bulk-billing agreement:

```
 9            Q Okay. I'm going to represent to you that it
10       did have a 36-month term with the option to renew for
11       either party.
12            A Okay.
13            Q Well, actually, it auto -- let me rephrase
14       that.
15                      It automatically renewed unless one of
16       the parties gave notice.
17            A Okay.
18            Q Okay. So fair to say then that that contract
19       had a potential for a hundred percent attrition rate
20       every three years?
21            A I have to -- I -- I don't know the legality
22       because I'm not an attorney.
```

| 93 | 21 | There would not be the potential of 100% attrition rate every three years. The contracts for service was between the homeowner and Premier. Should the bulk billing agreement terminate, then Premier would have to bill the homeowner directly. | To update and clarify |
|---|---|---|---|

```
23           Q Well, I'm not asking you about the legal
24      aspect. I'm asking about the calculation --
25           A If it's –

1            Q -- the valuation --
2            A If it's allow -- if it allows for the total
3       termination under that agreement, then that would stop
4       at that particular point.
5            Q Okay. So that would be a hundred percent
6       attrition rate at that point?
7            A That could be.
```

| 94 | 7 | Again, the contract for services was between the homeowners and Premier and therefore the termination would not invalidate the agreements | To update and clarify |
|---|---|---|---|

**6.** In short, the bulk-billing agreement only addresses the manner in which payment for regular alarm monitoring services were collected. Under the agreement, the Association collected the fee for this service as part of each homeowners dues, and then remitted such payment to Premier. Indeed, ADT's proposed Trial Exhibit # 13 recognizes that, upon termination of the bulk-billing agreement, each homeowner could:

> 3. Keep your service with Premier Electronics. If you have not done so, you must make arrangements to avoid an interruption in service. This requires a 3rd party contract directly between the property owner and Premier Electronics.

*See* Exhibit B. Although there is no evidence that this letter was ever actually sent to any PCR homeowners, it does acknowledge what should have happened when the Association decided not to renew the bulk-billing agreement. As Shawn Griffith testified in his deposition, "[The Association] had the right to cancel. They never had the right to switch." Griffith Depo. 19:5-6.

7. The undisputed facts and evidence presented at trial will show that ADT and its co-conspirator Insight[1] lied to Premier's customers in PCR to gain entry into their homes in order to reprogram or replace Premier's equipment in order to redirect any alarm signal from Premier's monitoring contractor to ADT's monitoring station. In doing so, ADT intentionally interfered with Premier's performance of its security monitoring agreements with homeowner customers in PCR by preventing the performance or by making the performance impossible or more burdensome, difficult, or expensive. *See, e.g.*, *AKB Hendrick, L.P. v. Musgrave Enters.*, 390 S.W.3d 221, 236 (Tex. App.—Dallas 2012, no pet.); *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, pet. denied). ADT's tortious conduct intentionally induced or caused PCR homeowner to breach their security monitoring agreements with Premier. *See, e.g., Clements v. Withers*, 437 S.W.2d 818, 820 (Tex. 1969); *John Paul Mitchell Sys. v. Randall Food Mkts.*, 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied).

8. ADT's argument in its Motion to Strike is just another attempt to revive the same tortured argument ADT made in its motion for summary judgment that the bulk-billing agreement and each PCR customer's individual security monitoring agreement are coterminous—meaning that the non-renewal of the bulk-billing agreement somehow magically automatically cancelled the customer's alarm monitoring service with Premier. Viewed in the context of the surrounding facts and circumstances at the time of their execution and the conduct

---

[1] Because there is ample evidence of a conspiracy between ADT and Insight, ADT is also responsible for the acts of Insight that were done in furtherance of the common purpose. *See, e.g., Carroll v. Timmers Chevrolet, Inc.*, 592, 922, 925-26 (Tex. 1979); *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983).

of the parties themselves under the respective agreements—as this Court is required to do-- the language of the operative agreements simply does not support such an interpretation. Accordingly, this Court denied ADT's motion for summary judgment on Premier's remaining four causes of action [Doc. 56].  For similar reasons, this Court should deny ADT's motion to exclude evidence of the damages caused by ADT's interference with its existing contracts and prospective relations with Premier's PCR customers.

## PRAYER

For the foregoing reasons, Premier requests that this Court deny ADT LLC's Motion in Limine to Exclude Evidence of Previously Excluded Damages [Doc. 70] in its entirety.  Premier prays for general relief.

Respectfully submitted,

*/s/ John M. Frick*

_____

**John M. Frick**
Texas Bar No. 07455200
*jfrick@bennettweston.com*

**BENNETT, WESTON, LAJONE & TURNER, P.C.**
1603 LBJ Freeway, Suite 280
Dallas, Texas  75234
Tel:     (972) 662-4901
Fax:    (214) 393-4043

**ATTORNEY FOR PLAINTIFF
PREMIER ELECTRONICS, L.L.C.**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing Plaintiff Premier's Amended Response to ADT LLC's Motion in Limine to Exclude Evidence of Previously Excluded Damages has been furnished to the following counsel in accordance with the Federal Rules of Civil Procedure, this 25th day of January 2021:

Eric S. Boos
SHOOK, HARDY & BACON, L.L.P.
Citigroup Center
201 S. Biscayne Blvd., Suite 3200
Miami, FL  33131-4332
esboos@gmail.com

Charles C. Eblen (*Pro Hac Vice*)
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
ceblen@shb.com

Tanya L. Chaney
SHOOK, HARDY & BACON, L.L.P.
JPMorgan Chase Tower
600 Travis St., Ste. 3400
Houston, TX  77002-2926
tchaney@shb.com

                                */s/ John M. Frick*_____
                                John M. Frick